DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

and

National Treasury Employees Union, Intervenor.

No. 87–1439.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1988.

Decided Dec. 2, 1988.

Order Denying Rehearing En Banc Feb. 28, 1989.

Thomas M. Bondy, Atty., Dept. of Justice, with whom, John R. Bolton, Asst. Atty. Gen., Richard K. Willard, Asst. Atty. Gen.* and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief for petitioner.

Robert J. Englehart, Atty., F.L.R.A., with whom, Ruth E. Peters, Sol., William E. Persina, Deputy Sol. and Arthur A. Horowitz, Associate Sol., Washington, D.C., F.L.R.A., were on the brief for respondent.

Clinton D. Wolcott, with whom, Lois G. Williams, Washington, D.C., was on the brief for intervenor, Nat. Treasury Employees Union.

Before MIKVA and D.H. GINSBURG, Circuit Judges and JACKSON,** District Judge.

Opinion for the Court filed by District Judge JACKSON.

Opinion concurring and dissenting in part filed by Circuit Judge D.H. GINSBURG.

JACKSON, District Judge:

We are again presented with a controversy between a federal agency and a union representing its employees as to whether

* At time brief was filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

they must bargain over the agency's power to contract for the goods and services it needs from the private sector. The Internal Revenue Service ("IRS"), petitioner, insists that "contracting-out" is an exclusive management prerogative and, thus, not a proper subject for negotiation in the course of collective bargaining. Intervenor National Treasury Employees Union ("NTEU" or "Union"), which represents IRS' non-management employees, precipitated this particular dispute with two proposals it demanded the parties address in supplemental negotiations under their master agreement in September, 1986. Respondent Federal Labor Relations Authority ("FLRA") sided with the Union when the issue reached it in June, 1987, and directed the IRS to bargain with NTEU over the proposals. IRS now petitions to set aside FLRA's decision. FLRA and the Union cross-petition to enforce it. We enforce the order of the FLRA as to the first of the proposals, and set it aside as to the second.

The case resumes an unresolved conflict between labor and management throughout the government generally as to the relationship between a document first promulgated by the Office of Management and Budget ("OMB") in 1966 (later revised), known as "Circular No. A-76" (the "Circular"), and various provisions of Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("CSRA" or the "Act"). The Circular declares it to be the "general policy" of the government to rely on "commercial sources" to supply products and services necessary to its operation, *id.*, para. 4.a., and, to that end, admonishes that agencies are not to "start or carry on any activity to provide a commercial product or service if the product or service can be procured more economically from a commercial source." *Id.*[1] A "Supplement" to the Circular prescribes methods for calculating the differential between "in-house" and "contract-out" procurements, Supplement, Part IV, and directs each agency to establish an "administrative appeals procedure" to resolve questions from "directly affected parties" relating to "cost comparisons" expeditiously, and, in any event within 30 days. *Id.*, Part I, Ch.

2, para. I. The Circular itself continues to state that in-house procurements are "authorized" only if a cost comparison demonstrates that the government can provide what is needed more cheaply than a "qualified commercial source" on an "ongoing basis." Circular, para. 8.d.

Government employees may of course, be "directly affected" by their agency's decisions to look elsewhere for products or services the employees themselves might conceivably furnish. Nevertheless, one provision of the CSRA, spoken of as the "management rights clause" expressly confirms the authority of the agency's "management officials" to, *inter alia*, "make determinations with respect to contracting out." 5 U.S.C. § 7106(a)(2)(B). Elsewhere, however, the CSRA requires agencies to bargain collectively, and in good faith, with federal employee unions over "conditions of employment," including "policies, practices, and matters ... affecting working conditions." 5 U.S.C. §§ 7103(a)(12), 7114(a)(4), 7117, 7106(b).

NTEU proffered two "proposals" (among others) to IRS as fit subjects for bargaining: the first would establish the "grievance and arbitration" provisions of the master labor agreement between them as the internal "administrative appeals procedure" mandated by the Supplement to the Circular for disputed "contracting-out" cases; the second would provide that no outside contract be awarded "until all grievance procedures, up to and including arbitration" had been exhausted. The IRS demurred. The proposals, it said, were non-negotiable, because they purported to place an exclusive management prerogative at hazard in the collective bargaining process. The Union appealed to the FLRA pursuant to 5 U.S.C. § 7105(a)(2)(E) which found both proposals negotiable, and the IRS appealed to us.

■ A similar proposal by a federal employees' union to subject an agency's decisions to contract out in accordance with the Circular to the collective bargaining process has been before us in the past, and we find this case to be governed by that precedent. In *EEOC v. Federal Labor Relations Authority*, 744 F.2d 842 (D.C.Cir.

---

1. A "commercial" product or service is to be distinguished from those generated in the course of "governmental" functions or activities, i.e., those functions or activities "so intimately related to the public interest as to mandate performance by Government employees." Circular, para. 6.

1984), *cert. dismissed,* 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986), the Equal Employment Opportunity Commission ("EEOC") had refused to bargain with the American Federation of Government Employees over its proposal that would have rendered the EEOC's decision to contract-out grievable.[2] The FLRA rejected substantially the same management-prerogative position espoused by the IRS here, and required the EEOC to bargain over the proposal, and the agency appealed. We affirmed the FLRA, holding that the proposal would not impair management's statutorily reserved right to contract out; it merely rendered the grievance procedure the mechanism by which union members could make their displeasure with a decision to do so known and ask for relief. The court said:

> A grievance alleging noncompliance with the Circular ... does not affect management's substantive authority, within the meaning of the statutory language, to contract-out. Rather, it provides a procedure for enforcing the Act's requirement that contracting-out decisions be made in accordance with applicable laws.... We therefore find that a grievance asserting that management failed to comply with its statutory or regulatory parameters in making a contracting-out decision is not precluded by the management rights clause.

*Id.* at 850–51.

The *EEOC* court was assuming, however, without considering or deciding, that the Circular was either an "applicable law," with which all contracting-out decisions must, by statute, accord, 5 U.S.C. § 7106(a)(2)(B), or it was a "law, rule or regulation" a failure to comply with which would, again by statute, give rise to a grievance if it were to affect "conditions of employment." 5 U.S.C. § 7103(a)(9)(C)(ii). The Supreme Court subsequently dismissed a writ of certiorari, issued upon EEOC's petition, as having been improvidently granted, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986), when the EEOC attempted to argue that the Circular was none of the foregoing, arguments it had never made before either the FLRA or this court. Those arguments have now been borrowed

by the IRS, and are now before us (as they were this time also before the FLRA) as reason to conclude that *EEOC v. FLRA* is distinguishable, or was wrongly decided.

We do not, however, find an intellectually legitimate basis to distinguish *EEOC* from this case. The new arguments are merely that; they suggest alternative reasons why the "management rights" provisions of Section 7106 should be read to preclude employee grievances with respect to an agency's decision to contract-out. The holding of *EEOC* is, however, expressly to the contrary. Any distinction we might attempt to predicate on the difference in wording of the AFGE's proposal in *EEOC* and NTEU's first proposal here would be illusory. The essence of the controversy is the same, as to which *EEOC* has unequivocally held contracting-out decisions to be both grievable and, perforce, bargainable.

The new arguments have, however, persuaded the Ninth Circuit, *see Defense Language Institute v. FLRA,* 767 F.2d 1398 (9th Cir.1985), *cert. dismissed,* 476 U.S. 1110, 106 S.Ct. 2004, 90 L.Ed.2d 647 (1986), and more recently, the Fourth Circuit, *U.S. Department of Health and Human Services v. FLRA,* 844 F.2d 1087 (4th Cir.1988) (*en banc*) that *EEOC* was wrongly decided. That option, however, is not open to us. The doctrine of *stare decisis* "demands that we abide by a recent decision of one panel of this court unless the panel has withdrawn the opinion or the court *en banc* has overruled it." *Brewster v. Comm'r of Internal Revenue,* 607 F.2d 1369, 1373 (D.C.Cir.1979). Accordingly, we affirm the FLRA as to NTEU's first proposal, and enforce its order that the IRS and NTEU bargain over its inclusion in their master labor agreement.

■ We are not, however, so constrained with respect to NTEU's second proposal. No other court appears to have addressed its like. Perhaps no other union has been so bold as to suggest it. We conclude that it encroaches entirely too far upon management's authority to accomplish its agency's mission with dispatch, whether or not, as the Fourth Circuit concluded in *HHS v. FLRA,* binding arbitration of itself imports the substitution of arbitral judgment for

---

**2.** The union's proposal in *EEOC* was simply that the agency agree to "comply" with the Circular "and other applicable laws and regulations concerning contracting-out." The agency presumably intended to comply with the Circular of its

own volition, but objected to including a commitment to do so in its collective bargaining agreement because, *inter alia,* it believed its contracting-out decisions would then become grievable where they had not been before.

that of management as to the circumstances in which the agency should contract-out.

The second proposal, quite simply, would oblige the agency to await an arbitrator's decision before going forward with a private sector procurement, and, as the Fourth Circuit observed, arbitrations of grievances under collective bargaining agreements can take years to resolve. 844 F.2d at 1099. It matters not whether the arbitrator ultimately approves or disapproves management's decision to contract-out (and leaving aside difficult questions as to his authority to affect the decision in any way in fashioning a remedy for aggrieved employees), the delay alone could compromise the managerial judgment involved in procuring products or services necessary to the agency's mission when they are needed.

We have recently held non-negotiable a proposal to delay implementation for six months of a new U.S. Customs Service program to grant vessels arriving from abroad conditional permission to enter U.S. ports while the union makes a study of the program's impact on bargaining unit employees. *United States Customs Service v. FLRA*, 854 F.2d 1414 (D.C.Cir.1988). The proposal, we said, "is not directed at *how* the agency will implement its program; it would serve rather to place on the bargaining table the agency's decision as to *when* to implement its new program," a matter which "is part and parcel of the reserved management right to determine the means by which an agency's work will be performed." *Id.* at 1419. (Emphasis in original).

The same reasoning obtains with respect to management decisions of an agency to contract for goods or services outside the federal workplace. We therefore reverse the decision of the FLRA holding NTEU's second proposal bargainable.

*It is so ordered.*

D.H. GINSBURG, Circuit Judge, concurring and dissenting:

I agree with the court that NTEU's proposal that no outside contracts be awarded prior to exhaustion of all grievance procedures is non-negotiable. I do not agree, however, that our decision in *EEOC v. FLRA*, 744 F.2d 842 (D.C.Cir.1984), *cert. granted*, 472 U.S. 1026, 105 S.Ct. 3497, 87 L.Ed.2d 629 (1985), *cert. vacated*, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986), "govern[s]" this case so as to preclude our reaching the merits of the IRS's arguments

that, because the Circular was neither an "applicable law" under 5 U.S.C. § 7106(a)(2)(B) nor a "law, rule, or regulation" under 5 U.S.C. § 7103(a)(9)(C)(ii), NTEU's proposal to make contracting-out decisions subject to grievance procedures is non-negotiable as well.

As the court points out, in *EEOC* we were "*assuming, without considering or deciding,* that the Circular was either an 'applicable law' ... or ... a 'law, rule, or regulation.'" Opinion at 882 (emphasis added); *EEOC,* 744 F.2d at 848, 850. As the court candidly states, the question of the Circular's legal status was "never [argued] before either the FLRA or this court." Opinion at 882. Indeed, the Supreme Court, noting the agency's failure "to raise [these claims] at any point in the Court of Appeals," *EEOC v. FLRA*, 476 U.S. 19, 106 S.Ct. 1678, 1681, 90 L.Ed.2d 19 (1986), concluded that this court was "without jurisdiction to consider" the issue. *Id.,* 106 S.Ct. at 1680.

Nevertheless, the court today holds that our previous decision resolved this issue, foreclosing us from considering it now. Granted that "new arguments are merely that," Opinion at 882; they are also arguments on which this court has not yet ruled. Thus, the court errs today insofar as it interprets the IRS to be arguing "that *EEOC v. FLRA* is distinguishable, or was wrongly decided." *Id.* The IRS makes no such argument. Because the earlier case did not decide the issue, there is no need for us to distinguish it, much less to overrule it; the prior case is simply irrelevant to the argument being made to us today.

If what the court does today, in merely a few strokes of the pen, were incorporated into our system of *stare decisis,* then the words, "We assume without deciding" and "We need not reach the question" would have no meaning. Whenever this court assumed a proposition for the purposes of argument, it would actually be deciding the issue it purported to reserve, and absent rehearing *en banc,* subsequent panels would be bound by its "decision."

Furthermore, whenever a party to any proceeding before this court failed to raise before the agency or the district court any argument that it could have raised there, that argument would be unavailable not only to the party before this court, as it should be, but also to *any* later litigant, the issue having already been "decided." This is obviously not the law of issue preclusion as we know it.

In my view, therefore, we have no choice but to reach the merits of the IRS's claim. We need not tarry long over it, however; the pros and cons have already been fully and ably spread upon the pages of the Federal Reporter by the Fourth Circuit, sitting *en banc. U.S. Department of Health and Human Services v. FLRA,* 844 F.2d 1087 (4th Cir.1988) *(HHS). See also Defense Language Institute v. FLRA,* 767 F.2d 1398 (9th Cir.1985). I am persuaded by Judge Wilkinson's detailed and thoughtful opinion for the court in *HHS* and would rule, consistent therewith, that the Circular is neither an "applicable law" nor a "law, rule, or regulation" and that NTEU's proposal to subject contracting-out decisions to grievance procedures is therefore non-negotiable.

Accordingly, I concur in part and dissent in part.

Before: WALD, Chief Judge, ROBINSON, MIKVA, EDWARDS, RUTH B. GINSBURG, STARR, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG and SENTELLE, Circuit Judges.

## ORDER

Petitioner's suggestion for rehearing *en banc* has been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing it is

ORDERED, by the Court *en banc,* that the suggestion is denied.

SILBERMAN, Circuit Judge, concurring in the denial of rehearing *en banc:* I think we should be exceedingly reluctant to agree to an *en banc* rehearing with two vacancies (as we will shortly have).

D.H. GINSBURG, Circuit Judge, with whom WILLIAMS and SENTELLE, Circuit Judges, join, concurring in the denial of rehearing *en banc:* I think it would be a poor use of our resources to rehear this matter *en banc.* Both the Fourth and the Ninth Circuits have decided, contrary to our panel, that OMB Circular A–76 is neither an "applicable law" under 5 U.S.C. § 7106(a)(2)(B) nor a "law, rule, or regulation" under 5 U.S.C. § 7103(a)(9)(C)(ii). *U.S. Department of Health and Human Services v. FLRA,* 844 F.2d 1087 (4th Cir. 1988) *(en banc)*; *Defense Language Institute v. FLRA,* 767 F.2d 1398 (9th Cir.1985). It is likely that the Supreme Court will want to resolve this question, since it indi-

cated its willingness to decide the same issue when it granted *certiorari,* 472 U.S. 1026, 105 S.Ct. 3497, 87 L.Ed.2d 629 (1985), to review our decision in *EEOC v. FLRA,* 744 F.2d 842 (D.C.Cir.1984) even before there was a split in the circuits on this question. The Court vacated its grant of *certiorari* however, when it determined that the issue was not properly before it. 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986).

In view of the Supreme Court's apparent interest in this issue, I do not conceive it to be a sensible allocation of our time to rehear this case *en banc.* If the Supreme Court, however, chooses not to resolve this question, I do not, by my concurrence today, suggest that I would oppose a request by the government that we consider this issue *en banc* in a subsequent case.