DEPARTMENT OF THE TREASURY, INTERNAL
REVENUE SERVICE *v.* FEDERAL LABOR
RELATIONS AUTHORITY ET AL.

No. 88–2123.   Argued January 8, 1990—Decided April 17, 1990

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, and KENNEDY, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 934. STEVENS, J., filed a dissenting opinion, *post*, p. 937.

*Deputy Solicitor General Shapiro* argued the cause for petitioner. With him on the briefs were *Acting Solicitor General Bryson, Assistant Attorney General Gerson, Harriet S. Shapiro, William Kanter*, and *Thomas M. Bondy*.

*Robert J. Englehart* argued the cause for respondent Federal Labor Relations Authority. With him on the brief were *William E. Persina* and *Arthur A. Horowitz. Gregory*

*O'Duden* argued the cause for respondent National Treasury Employees Union. With him on the brief were *Elaine Kaplan* and *Clinton Wolcott.**

JUSTICE SCALIA delivered the opinion of the Court.

In this case we review the determination of the Federal Labor Relations Authority (FLRA or Authority) that, under Title VII of the Civil Service Reform Act of 1978 (Act), 5 U. S. C. § 7101 *et seq.*, the Internal Revenue Service (IRS) must bargain with the National Treasury Employees Union (NTEU or Union) over a proposed contract provision subjecting to grievance and arbitration procedures claims that the IRS had failed to comply with an Office of Management and Budget (OMB) Circular relating to the "contracting out" of work.

I

Title VII of the Civil Service Reform Act establishes a collective-bargaining system for federal agencies and their employees, under the administration of the FLRA. The Act recognizes the right of federal employees to form and join unions, 5 U. S. C. § 7102, and imposes upon management officials and employee unions the duty to "negotiate in good faith for the purposes of arriving at a collective bargaining agreement." § 7114(a)(4). A collective-bargaining agreement must provide procedures "for the settlement of grievances," § 7121(a)(1), which are defined as "complaint[s] . . . concerning . . . any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment," § 7103(a)(9)(C)(ii); and the agreement must "provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration" which may be invoked by either party.

*Mark D. Roth, Stuart A. Kirsch, Walter Kamiat,* and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations et al. as *amici curiae* urging affirmance.

§ 7121(b)(3)(C). The agency's duty to bargain is qualified, however, in one pertinent respect. The Act reserves to management officials the authority "in accordance with applicable laws . . . to make determinations with respect to contracting out." § 7106(a)(2)(B).

Office of Management and Budget Circular A–76 generally directs federal agencies to "contract out" to the private sector their non-"governmental" activities (e. g., data processing) unless certain specified cost comparisons indicate that the activities can be performed more economically "in house." Executive Office of the President, OMB Circular A–76, as revised, 48 Fed. Reg. 37110 (1983). The Circular also requires agencies to establish an administrative appeals procedure to resolve complaints by employees or private bidders relating to "determinations resulting from cost comparisons performed in compliance with [the] Circular," or relating to decisions to contract out where no cost comparison is required. OMB Circular A–76, Supp. I–14, I–15 (1983).

During the course of contract negotiations with the IRS, respondent NTEU put forward a proposal that, with respect to contracting-out decisions employees wished to contest, the "grievance and arbitration" provisions of the collective-bargaining agreement would constitute the "internal appeals procedure" required by the Circular.[1] The IRS refused to bargain over this proposal, taking the position that its subject matter was nonnegotiable under the Act. The Union then petitioned for review by the Authority, which is empow-

---

[1] The proposed contract term read: "The Internal Appeals Procedure shall be the parties' grievance and arbitration provisions of the Master Agreements." 27 F. L. R. A. 976 (1987). The Court of Appeals characterized the proposal as "establish[ing] the 'grievance and arbitration' provisions of the master labor agreement between them as the internal 'administrative appeals procedure' mandated by the Supplement to the Circular for disputed 'contracting-out' cases." 274 U. S. App. D. C. 135, 136, 862 F. 2d 880, 881 (1988). We follow the Court of Appeals' interpretation of the proposed term.

ered by the Act to "resolv[e] issues relating to the duty to bargain." § 7105(a)(2)(E); see § 7117(c).

The FLRA held that the IRS was required by §§ 7114 and 7121 to negotiate over the proposal. In its view the IRS' failure to comply with Circular A–76 would be a "violation . . . of [a] law, rule, or regulation" affecting "conditions of employment," so that an employee complaint on the matter would qualify as a "grievance" for which procedures must be specified in the collective-bargaining agreement. 27 F. L. R. A. 976, 978–979 (1987). The FLRA found that the union's proposal was not precluded by § 7106(a)(2)(B)'s reservation of management authority over contracting-out determinations, because it "would only contractually recognize external limitations on management's right." *Id.*, at 978.[2]

The Court of Appeals for the District of Columbia Circuit affirmed the Authority's decision. 274 U. S. App. D. C. 135, 862 F. 2d 880 (1988). We granted certiorari. 493 U. S. 807 (1989).

## II

The management rights provision of the Act provides, in pertinent part:

> "(a) [N]othing in this chapter [*i. e.,* the Act] shall affect the authority of any management official of any agency—
>
> . . . . .
>
> "(2) *in accordance with applicable laws—*
>
> "(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in

---

[2] The FLRA also held that although Circular A–76 was a "government-wide rule or regulation" within the meaning of § 7117(a), that section of the statute did not render the union's proposal nonnegotiable because the proposal was "not inconsistent" with the Circular. 27 F. L. R. A., at 977. For reasons explained below in Part II–C, that issue is not properly before us.

grade or pay, or take other disciplinary action against such employees;

"(B) to assign work, *to make determinations with respect to contracting out,* and to determine the personnel by which agency operations shall be conducted;

"(C) with respect to filling positions, to make selections for appointments from—

"(i) among properly ranked and certified candidates for promotion; or

"(ii) any other appropriate source . . . ."   5 U. S. C. § 7106 (emphasis added).

In the proceedings below and again before this Court, the IRS has argued that even when an agency's decision to contract out violates OMB Circular A–76 it is still a decision "in accordance with applicable laws" and is thus immunized by the foregoing provisions from contractually imposed substantive controls—rendering the proposal here nonbargainable.[3] According to the IRS, the Circular is not a law, but an internal Executive Branch directive to agency officials regarding matters of office management.

The FLRA's position is that the management rights provisions of § 7106 do not trump § 7121, which entitles the union to negotiate and enforce procedures for resolving any "grievance" as defined in § 7103—that is, any claimed "violation, misinterpretation, or misapplication of *any law, rule, or regulation* affecting conditions of employment."   5 U. S. C. § 7103(a)(9)(C)(ii) (emphasis added).   Thus, according to the

---

[3] A qualification to § 7106 permits contract negotiations regarding "procedures which management officials of the agency will observe in exercising" the reserved management rights.   5 U. S. C. § 7106(b)(2).   Although they call our attention to this qualification, NTEU and the FLRA rightly refrain from asserting that it governs this case.   The proposal at issue would enable the grievance examiner to compel the IRS to follow the cost-comparison requirements of the OMB Circular, thereby dictating the substantive criteria for the contracting-out decision.   See *infra*, at 931.

FLRA, it makes no difference whether OMB Circular A–76 is an "applicable law"; so long as it is a "law, rule, *or* regulation" within the meaning of § 7103(a)(9)(C)(ii), § 7106(a) does not bar mandatory negotiation over NTEU's proposal. This, it appears, has been the FLRA's consistent position. See, *e. g., AFSCME Local 3097* v. *Department of Justice, Justice Management Div.*, 31 F. L. R. A. 322, 338 (1988) (§ 7106(a) reserves to management the right to make contracting-out decisions only when they are "in accordance with all applicable laws and regulations"); *GSA* v. *American Federation of Government Employees, AFL–CIO Nat. Council 236*, 27 F. L. R. A. 3, 6 (1987) (§ 7106(a) does not preclude union from compelling agency compliance with any "applicable law, rule, or regulation").

## A

We do not lightly overturn the FLRA's construction of the Act it is charged with administering. *Bureau of Alcohol, Tobacco and Firearms* v. *FLRA*, 464 U. S. 89, 97 (1983). We must accept that construction if it is a reasonable one, even though it is not the one we ourselves would arrive at. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984); *NLRB* v. *Food and Commercial Workers*, 484 U. S. 112, 123 (1987). For the reasons that follow, however, we conclude that the FLRA's construction is not reasonable.

The FLRA's position is flatly contradicted by the language of § 7106(a)'s command that *"nothing in this chapter"*—*i. e.,* nothing in the entire Act—shall affect the authority of agency officials to make contracting-out determinations in accordance with applicable laws. Section 7121 is among the provisions covered by that italicized language.

The FLRA presents four arguments to overcome this plain text. First, it contends that reading § 7106(a) to supersede

the grievance requirements of § 7121 would render certain portions of § 7121 superfluous.[4]  Subsection 7121(c) exempts from the grievance requirements, among other things, decisions concerning appointments and certain decisions concerning suspension and removal—decisions that are also referred to as protected management rights in § 7106(a).  Compare §§ 7106(a)(2)(A) and (C)(i) with §§ 7121(c)(3) and (4).  The suggestion is that these § 7121(c) exclusions would have been unnecessary if the decisions in question were already insulated from the grievance requirements by § 7106(a).  We disagree.  Subsection 7121(c) removes these agency decisions from the coverage of *only* § 7121(a)'s negotiated grievance provisions, yet does so whether or not the decisions are made in accordance with applicable laws; § 7106(a) removes the decisions from the coverage of the *entire* Act, but only to the extent the decisions are in accordance with applicable laws.  Thus, although §§ 7106(a) and 7121(c) sometimes overlap in their treatment of these enumerated agency decisions (each removes the decisions from the coverage of § 7121(a) when

---

[4] The relevant language of § 7121 is the following:

"(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. . . .

"(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

.          .          .          .          .

"(c) The preceding subsections of this section shall not apply with respect to any grievance concerning—

"(1) any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);

"(2) retirement, life insurance, or health insurance;

"(3) a suspension or removal under section 7532 of this title;

"(4) any examination, certification, or appointment; or

"(5) the classification of any position which does not result in the reduction in grade or pay of an employee."

they are made in accordance with applicable laws), each provision has quite a distinct effect on them as well.[5]

Second, the FLRA argues that § 7121 is among the "applicable laws" referred to in § 7106(a)(2)—so that § 7106(a) never excuses agency management from negotiating, and submitting to, grievance procedures over the exercise of reserved management rights. This cannot be the case. If the negotiation and grievance provisions of the Act, §§ 7114 and 7121, are "applicable laws" under this section, then presumably so is all the rest of the Act, there being no basis for treating those provisions specially. Thus, under the FLRA view, § 7106(a) in effect says that "nothing in this chapter shall affect the authority of management to make contracting out decisions in accordance with this chapter"—a pointless tautology. It is clear that the term "applicable laws" refers to laws *outside the Act.*

Third, the FLRA argues that the NTEU proposal is not barred by § 7106(a) because, in the words of the FLRA's opinion, its incorporation into the collective-bargaining agreement would "not itself establish any particular substantive limitation on management in the exercise of its right to make contracting-out decisions"; rather, it "would only contractually recognize and provide for the enforcement of external limitations on management's right." 27 F. L. R. A., at 980. Referring to one of its earlier decisions, the FLRA emphasizes that in a negotiated grievance proceeding the arbitrator would not second-guess the IRS on discretionary aspects of the contracting-out determination, but would only review claims "that the agency failed to comply with mandatory and

---

[5] The FLRA's position gets no support from § 7121(a)'s language providing that *"Except as provided in paragraph (2) of this subsection,* any collective bargaining agreement shall provide procedures for the settlement of grievances . . . ." (Emphasis added.) If that italicized language were construed to create the Act's only exception to the requirements of § 7121(a), then even the specific exclusions in subsection (c) of the provision would disappear.

nondiscretionary provisions" of the Circular. *Headquarters, 97th Combat Support Group (SAC) Blytheville Air Force Base, Ark.* v. *American Federation of Government Employees, AFL–CIO, Local 2840,* 22 F. L. R. A. 656, 661–662 (1986). He could, for example, order the agency to "reconstruct" the cost data it relied on in making a contracting decision, *ibid.,* and, if the decision was not cost justified as required by the Circular, he could order the agency to reconsider it; but he would impose no "substantive limitation" on the contracting-out decision (other than those imposed by the "law, rule, or regulation" invoked by the aggrieved employee). 27 F. L. R. A., at 980. The trouble with this argument is that it is entirely disconnected from the text of the statute. The Act does not empower unions to enforce all "external limitations" on management rights, but only limitations contained in "applicable laws." Or to put the point differently, there *are* no "external limitations" on management rights, insofar as union powers under § 7106(a) are concerned, other than the limitations imposed by "applicable laws." It makes no difference that, as a remedial matter, the arbitrator would at most order the IRS to redo its cost comparisons, and would not actually order a particular contract to be awarded or set aside. Section 7106(a) says that, insofar as union rights are concerned, it is entirely up to the IRS whether it will comply *at all* with Circular A–76's cost-comparison requirements, except to the extent that such compliance is required by an "applicable law" outside the Act.

Finally, the FLRA suggests that the term "applicable laws" in § 7106(a)(2) is coextensive with the phrase "any law, rule, or regulation" in § 7103(a)(9)(C)(ii), so that any agency contracting decision that gives rise to a grievance is by definition not "in accordance with applicable laws." The FLRA did not explicitly use this reasoning in its decision here, but it seems to have done so in other cases. See, *e. g., AFSCME Local 3097* v. *Department of Justice, Justice Management*

*Div.*, 31 F. L. R. A., at 333, 338–339.  This argument is simply contrary to any reasonable interpretation of the text.  A statute that in one section refers to "law, rule or regulation," and in another section to only "laws" cannot, unless we abandon all pretense at precise communication, be deemed to mean the same thing in both places.  Nor can the modifier "applicable" make the difference—not only because its meaning has nothing to do with extending the coverage in this fashion, but also because the Act in several places employs the terms "rule" and "regulation" *in conjunction* with the term "applicable law."  See, *e. g.*, § 7114(c)(2) (agency head shall approve collective-bargaining agreement "if the agreement is *in accordance with* the provisions of this chapter and *any other applicable law, rule, or regulation*") (emphasis added); § 7122(a) ("If upon review [of an arbitrator's decision] the Authority finds that the award is deficient — (1) because it is *contrary to any law, rule, or regulation* . . . the authority may take such action and make such recommendations concerning the award as it considers necessary, *consistent with applicable laws, rules, or regulations*") (emphasis added).  There is, in short, no justification for saying that *all* "rules" and "regulations" are encompassed by the term "applicable laws."  It cannot be true, therefore, that *all* actions not in accordance with a "law, rule, or regulation" under § 7103(a) (9)(C)(ii) are, by definition, also actions not "in accordance with applicable laws" in § 7106(a)(2).

## B

At oral argument, counsel for NTEU urged that we could sustain the FLRA's decision on the ground that the term "applicable laws" includes at least those regulations that carry the "force of law," and that OMB Circular A–76 is such a regulation.  Tr. of Oral Arg. 36.  We cannot, however, adopt this ground.  While we think it a permissible (though not an inevitable) construction of the statute that the term "applicable laws" in § 7106(a)(2) extends to some, but not all,

rules and regulations,[6] that extension should be made, and its precise scope described, in the first instance by the FLRA—which has been proceeding until now on the mistaken assumption that §7106(a) is irrelevant, or that "applicable laws" in §7106(a)(2) and "any law, rule or regulation" in §7103(a)(9)(C)(ii) are entirely synonymous. As we emphasized in *Chevron*, when an agency is charged with administering a statute, part of the authority it receives is the power to give reasonable content to the statute's textual ambiguities. 467 U. S., at 843–844. That is a task infused with judgment and discretion, requiring the "'accommodation of conflicting policies that were committed to the agency's care.'" *Id.*, at 845, quoting *United States* v. *Shimer*, 367 U. S. 374, 383 (1961). It is not a task we ought to undertake on the agency's behalf in reviewing its orders. Cf. *SEC* v. *Chenery Corp.*, 318 U. S. 80, 88, 95 (1943); *Burlington Truck Lines, Inc.* v. *United States*, 371 U. S. 156, 169 (1962).

The IRS contends that even though the term "applicable laws" includes some rules and regulations, under no reasonable construction could it include internal directives like OMB Circular A–76. We are poorly situated to evaluate that argument, since the Court of Appeals did not consider it, neither of the respondents briefed it, and counsel for respondents addressed it in only the most cursory fashion at oral argument. It is, moreover, an argument that calls for a very difficult abstract conclusion, to wit, that no conceivable reasonable interpretation of "applicable laws" could include this Circular. The Court of Appeals, on remand, may wish to enter into that inquiry, or may prefer to await the FLRA's specification, on remand, of the particular permissible interpretation of "applicable laws" (if any) it believes embraces the Circular. In any event, we decline to consider the point at this stage in the proceedings.

[6] The IRS concedes this point. See Reply Brief for Petitioner 7; Tr. of Oral Arg. 14.

## C

Finally, the IRS argues that the decision below should be reversed outright on the ground that the Union's proposal is inconsistent with the "no arbitration" language in OMB Circular A–76, and is therefore nonnegotiable under § 7117, which provides that "the duty to bargain in good faith shall, *to the extent not inconsistent with any Federal law or any Government-wide rule or regulation,* extend to matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation." 5 U. S. C. § 7117(a)(1) (emphasis added). As this argument was not raised or considered in the Court of Appeals, we do not reach it. See *EEOC v. FLRA,* 476 U. S. 19, 24 (1986) *(per curiam).*[7] Nor do we decide whether the FLRA properly held Circular A–76 to be a "rule" or "regulation" within the meaning of § 7103(a)(9); although the IRS raised this question as a separate ground for reversal in its petition for certiorari, it has relied only on the "management rights" clause of § 7106(a) in its argument before this Court.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Because the Court remands for further proceedings I believe are unnecessary, I respectfully dissent. As I read the opinion below, the agency found OMB Circular A–76 to be an "applicable law" within the meaning of the Civil Service Reform Act of 1978's management rights provision, 5 U. S. C.

---

[7] JUSTICE STEVENS contends that § 7117(a)(1) bars negotiation over the Union's proposal for yet another reason, namely, that the proposal covers a matter that is "the subject" of a " 'Government-wide rule or regulation.' " *Post,* at 938 (dissenting opinion). This argument not only was not raised or considered below, but has not even been raised by the IRS here. We decline to address it.

§ 7106(a)(2), and therefore determined that the Union's proposal would not infringe management's reserved rights.[1] Since the Federal Labor Relations Authority (FLRA or Authority) could permissibly interpret the statutory term to include regulations having the "force of law" and could permissibly find that the Circular is such a regulation, as the Court acknowledges, see *ante*, at 932, I would affirm the judgment below.[2] The FLRA's decision that the Circular is an "applicable law" is entirely reasonable. The Circular was promulgated as a formal regulation, with notice published in the Federal Register and public comment invited. See Executive Office of the President, OMB Circular A–76, 44 Fed. Reg. 20556 (1979), as amended, 48 Fed. Reg. 37110 (1983), 50 Fed. Reg. 32812 (1985). It is referenced by, and its terms generally restated in, the Federal Acquisition Regulations, codified at 48 CFR pt. 7, subpt. 7.3 (1988). By its terms, agency compliance is mandatory and enforced. OMB Circular A–76, Supp. Intro. and I–14, I–15 (rev. Aug. 4, 1983). Hence, I would uphold the FLRA's conclusion that the Circular is an "applicable law" within the meaning of § 7106(a)(2).[3]

---

[1] See 27 F. L. R. A. 976, 979 (1987) (the Union proposal "require[s] nothing that is not required by section 7106(a)(2) of the Statute itself, namely, that determinations as to contracting-out must be made 'in accordance with applicable laws'").

[2] I am inclined to agree with the position taken by the Deputy Solicitor General at oral argument, see Tr. of Oral Arg. 14, that "applicable laws" include not only statutes but also regulations having the force of law, and that the Administrative Procedure Act (APA) provides the relevant measure. See *id.*, at 47 ("[I]f a private party could bring an APA action, that would be very strong, if not conclusive, evidence that . . . you are dealing with an applicable law"). Under the APA, an agency action inconsistent with any valid and binding rule or regulation is actionable by anyone "aggrieved" by it. See 5 U. S. C. §§ 702, 706(2)(A); *Center for Auto Safety* v. *Dole*, 264 U. S. App. D. C. 219, 223, 235, 828 F. 2d 799, 803, 815 (1987); *Padula* v. *Webster*, 261 U. S. App. D. C. 365, 368, 822 F. 2d 97, 100 (1987).

[3] I do not agree with JUSTICE STEVENS that, even if OMB Circular A–76 is an applicable law, § 7117(a)(1) precludes bargaining over the Union

The Court finds the FLRA's interpretation of "applicable laws" unreasonable, not because it is an implausible reading in itself, but because it is indistinguishable from the Authority's interpretation of the phrase "law, rule, or regulation" which is contained in a different section of the Civil Service Reform Act of 1978. See *ante*, at 931–932. I suspect the Court reads too much into the difference in language between "applicable laws" in § 7106(a)(2) and "law, rule, or regulation" in § 7103(a)(9)(C)(ii). But, in any event, I understand the Court's decision to say only that the two phrases are not synonymous. *Ibid.* If the FLRA, in fact, has employed the same definition for the two phrases, which is arguable, the Authority's error most likely was to embrace too restrictive a view of the scope of "law, rule, or regulation."[4] Thus on remand the FLRA is free to interpret "ap-

proposal because the Circular is also a " 'Government-wide rule or regulation.' " See *post*, at 938. Section 7117(a)(1) provides:

"[T]he duty to bargain in good faith shall, to the extent not inconsistent with any Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation."

I agree with JUSTICE STEVENS that the Circular is a Government-wide rule or regulation, but I do not read the provision to bar a union proposal that asks only that an existing rule or regulation be incorporated in its entirety into the union's collective-bargaining agreement. The function of § 7117(a)(1) appears to be to insulate from the bargaining process union efforts to change anything that has already been settled by those with authority over the agency—e. g., Congress, the President, or OMB. The two clauses in § 7117(a)(1) explain that a union proposal in direct conflict with, or covering the same ground as, a Government-wide rule or regulation is not bargainable. They establish a kind of pre-emption by which agencies may not adopt rules where those with greater authority have adopted a contrary rule or occupied the field. Thus, no purpose is served by including the *rule or regulation itself* within "matters which are the subject of" any Government-wide rule or regulation. Incorporating a Government-wide rule into a collective-bargaining agreement does not place the agency at odds with any greater authority.

[4] That the Authority found below that OMB Circular A–76 is a "law, rule, or regulation" under § 7103(a)(9)(C)(ii), see 27 F. L. R. A., at 978,

plicable laws" to cover not only statutes, but also regulations and rules that are binding on the agency exercising its reserved rights. See n. 2, *supra*. The Authority is also free to interpret "law, rule, or regulation" to cover these and more—for instance, nonbinding policy statements and unpublished internal agency guidelines.

Finally, I take issue with the Court's expansive view of the management rights provision as abrogating any union rights vis-à-vis decisions such as contracting out, so long as agency decisions are made consistently with applicable laws. See *ante*, at 931. Section 7106(a) does not purport to make other provisions of the Act *wholly inapplicable* to the enumerated subject areas. It says only that nothing in the statute "*shall affect* the authority of any management official of any agency" to make certain types of decisions. (Emphasis added.) An exercise of union rights that does not *affect* management's existing authority is fully consistent with this provision. Insofar as the Union proposal would require merely what is already required by OMB Circular A–76, it would not affect the Internal Revenue Service's authority to make contracting out decisions. Therefore it would not infringe the agency's reserved rights. Because I do not read the Authority's decision as clearly relying on this ground, I do not think it necessary for the Court to have reached it.

JUSTICE STEVENS, dissenting.

If OMB Circular A–76 (rev. Aug. 4, 1983) is not an "applicable law" within the meaning of 5 U. S. C. § 7106(a)(2), the plain language of that section requires an outright reversal of

does not undermine the validity of its decision even if its definition of "law, rule, or regulation" was too narrow. If the Circular fit within an overly restrictive definition of the phrase, *a fortiori*, it must fit within an appropriately broad definition. Moreover, the FLRA's finding that the Union's proposal did not interfere with reserved management rights because OMB Circular A–76 is encompassed by the term "applicable laws" is sufficient ground in itself for the decision and was relied on as such by the Authority. See 27 F. L. R. A., at 979.

the Court of Appeals' decision. I have previously endorsed the view that the Circular is not an applicable law, and I still think that conclusion is correct. *EEOC* v. *FLRA*, 476 U. S. 19, 27 (1986) (dissenting opinion); see also *U. S. Dept. of Health and Human Services* v. *FLRA*, 844 F. 2d 1087 (CA4 1988) (en banc). But even if the Circular were an "applicable law," it would then certainly also be "a Government-wide rule or regulation" within the meaning of §7117(a)(1). Under the plain language of that section, the duty to bargain does not extend to matters which are the subject of such a regulation. By seeking to bargain about enforcement of the Circular, the Union seeks to bargain about matters subject to the Circular. Cf. 844 F. 2d, at 1099. I am therefore persuaded that whether or not one interprets Circular A–76 as an applicable law, either §7106(a)(2) or §7117(a)(1) requires reversal. To the extent that the Court instead leaves the issue open on remand, I respectfully dissent.