# Brady Act Implementation Issues

The Attorney General may impose an expiration date on the validity of a check, conducted pursuant to the Brady Act by the national instant criminal background check system, that authorizes the transfer of a firearm.

Information from the national instant criminal background check system may be disclosed to law enforcement agencies to further their criminal investigations, but disclosures may not be made for the purpose of establishing firearms registries and non-consensual disclosures may not be made for employment and licensing purposes.

The Privacy Act places no restrictions on the Attorney General's express authority under the Brady Act to request information from federal agencies identifying individuals who fall within the categories of persons prohibited from possessing firearms.

February 13, 1996

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
FEDERAL BUREAU OF INVESTIGATION

This memorandum responds to your request for our advice concerning implementation of the Brady Handgun Violence Prevention Act, Pub. L. No. 103–159, 107 Stat. 1536 (1993) ("Brady Act"). Specifically, you have asked three questions relating to the national instant criminal background check system ("NICS") mandated by the Brady Act:

> (I) May the Attorney General impose an expiration date on a NICS check that allows the transfer of a firearm?
> (II) May NICS be used for purposes other than conducting background checks on prospective firearms purchasers?
> (III) May the Attorney General request from federal agencies all information identifying individuals who fall within the categories of persons prohibited from possessing firearms?

We address each of these questions below.

You have also asked us to review a memorandum prepared by the Office of Policy Development ("OPD") that concludes that the Brady Act does not preempt states from imposing additional restrictions providing for waiting periods on the sale of firearms. We agree with the conclusion reached by OPD.

## I. *The Attorney General May Impose An Expiration Date on a NICS Check*

Section 103 of the Brady Act provides for the establishment of NICS by the Attorney General. The system must be operational by the start of 1999. Firearms dealers will then be required to refer the proposed firearm transfer to that system to determine whether any legal impediment exists to the sale. 18 U.S.C. § 922(t)(1)

(1994). You have advised us that upon completion of the NICS check, the system would notify the firearm dealer of the results of the check by an indication that the transfer would be legal or not. You have asked whether the Attorney General has the authority to impose an expiration date on the validity of a NICS check that allows for the transfer of a firearm. As discussed below, we conclude that the Attorney General may impose an expiration date on a NICS check.

Section 103(b) of the Brady Act states that "the Attorney General shall establish a national instant criminal background check system that any licensee may contact . . . to be supplied immediately, on whether receipt of a firearm by a prospective transferee would violate section 922 of title 18, United States Code, or State law." 107 Stat. at 1541. Section 103(d) provides that "[o]n establishment of the system under this section, the Attorney General shall notify each licensee and the chief law enforcement officer of each State of the existence and purpose of the system and the means to be used to contact the system." *Id.* at 1541–42. Section 103(e)(2) authorizes the Attorney General to develop the computer software and design as necessary to "establish and operate the system in accordance with this section." *Id.* at 1542.

Although the Brady Act does not specifically provide for an expiration date for a NICS check that authorizes a firearm transfer, we believe that in carrying out her responsibilities under the Act, the Attorney General has the authority to impose, in effect, a "useful life" limitation on the validity of the check. Such an exercise of authority would be supported by the Act's legislative history.

The Supreme Court has acknowledged the legitimacy of the executive branch's completing the work of Congress, notwithstanding the lack of a specific direction by the legislative branch to do so. "The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974). More recently, the Court stated: "As we emphasized in [*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)], when an agency is charged with administering a statute, part of the authority it receives is the power to give reasonable content to the statute's textual ambiguities." *Department of Treasury, Internal Revenue Serv. v. Federal Labor Relations Authority*, 494 U.S. 922, 933 (1990).

A decision by the Attorney General to impose an expiration date on a NICS check would be supported by the Brady Act's legislative history. The purpose of the Brady Act is to prevent convicted felons and other persons who are barred by law from purchasing guns from gun dealers. *See* H.R. Rep. No. 103–344, at 7 (1993). This purpose is served by the Attorney General establishing a national instant criminal background check system that is "capable of instant response to inquiries and use by licensed gun dealers . . . at the point of firearm purchase." *Id.* at 8. NICS will enable firearms dealers to determine "whether a proposed

transfer would be a prohibited one.'' *Id.* at 11. NICS ''guarantees immediate delivery of a handgun to a proven law-abiding citizen.'' *Id.* at 33 (dissenting views).

These congressional statements reveal an intent that the NICS check be conducted close to the time of the proposed sale and that the Attorney General establish a system that will operate in that fashion. The purpose of the Brady Act, which is to prohibit the sale of firearms to certain individuals, is served by a system that requires a check to occur in close proximity to a firearm sale. If a NICS check could be requested at any time prior to a sale and the results of that check were to remain valid for an indefinite period of time, a purchaser could obtain a NICS check, wait to purchase the firearm, and then engage in conduct that would otherwise bar the purchase of the firearm. Imposing an expiration date on the NICS results would better ensure that firearm transfers are made to law-abiding citizens because the dealers would not be able to rely on stale information in transferring the weapon.

We now turn to your suggestion that the Attorney General impose an expiration date of thirty days following each NICS check. We believe that although a thirty day period might be reasonable, a forty-five or sixty day period might be more reasonable. Imposing a longer period of time would better afford an opportunity to those individuals who were unable to return to the firearms dealer because of health or other legitimate personal reasons.

## II. *NICS May Be Accessed for Other Law Enforcement Purposes*

In establishing NICS, section 103 of the Brady Act directs the Attorney General to gather state criminal history records to include with the federal criminal records system and to obtain information on persons for whom receipt of a firearm would violate 18 U.S.C. § 922(g) or (n) or state law. You have advised us that the system will include, inter alia, records on dishonorable dischargees from Defense Department files, on drug users and mental defectives/commitments from Veterans Affairs Department and Defense Department files, and on drug users from the pilot license files of the Federal Aviation Administration. You have asked whether information from NICS may be disclosed to law enforcement agencies to further their investigations and to other agencies for employment and licensing purposes unrelated to firearm purchases. As discussed below, we believe NICS may be accessed by, or information therefrom may be disclosed to, law enforcement agencies. Disclosures for purposes of establishing firearms registries, however, are prohibited. Also, non-consensual disclosures for employment and licensing purposes are not authorized.

Under 28 U.S.C. § 534 (1994), the Attorney General has the authority to disseminate NICS information to authorized federal, state, and local officials for their official use. The disclosure, however, must satisfy the requirements of the Privacy

Act. Section 105 of the Brady Act states that the Act "shall not be construed to alter or impair any right or remedy" under the Privacy Act. 107 Stat. at 1543.

The Privacy Act provides, in relevant part, that:

> No agency shall disclose any record which is contained in a system of records . . . to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be —
>
> (1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;
>
> . . . .
>
> (3) for a routine use . . .;
>
> . . . .
>
> (7) to another agency . . . for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought.

5 U.S.C. § 552a(b) (1994).

The Privacy Act defines a "system of records" as a group of records under the control of an agency "from which information is retrieved by the name of the individual or by some identifying number." 5 U.S.C. § 552a(a)(5) (1994). Based upon your description, it is clear that NICS constitutes a "system of records" as that term is defined in the Privacy Act. Accordingly, only disclosures falling within an exception under the Act are permissible.

Section 552a(b)(1) provides a "need to know" exception and authorizes the intra-agency disclosure of information for necessary, official purposes. Under this exception, components of the Department of Justice needing to know the information in the performance of their official duties will be able to access NICS for that purpose.

Section 552a(b)(3) permits the disclosures pursuant to "routine use notices" published in the Federal Register. A "routine use" is defined as the use of information "for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The purpose for which the information in NICS will be collected is a law enforcement purpose. As discussed earlier, the system will be used to prevent convicted felons and other ineligible persons from purchasing guns. We believe that disclosure of NICS information to law enforcement agencies to further their criminal investigations should be held to be compatible with the law enforcement purpose for which the information was collected.

Even if a "routine use" were not promulgated under § 552a(b)(3), law enforcement agencies would be able to access NICS or obtain NICS information pursuant to § 552a(b)(7), if the requests were submitted in writing and signed by the head of the agencies or authorized designees.

There are no exceptions in the Privacy Act that would permit the non-consensual disclosures of NICS information for non-law enforcement purposes. Accordingly, consent from the individual would be required to access NICS for purposes of employment and licensing inquiries. *

Section 103(i) of the Brady Act does not change our analysis or conclusion relating to NICS disclosures. Section 103(i) reads:

> PROHIBITION RELATING TO ESTABLISHMENT OF REG-
> ISTRATION SYSTEMS WITH RESPECT TO FIREARMS.—No
> department, agency, officer, or employee of the United States
> may—
> (1) require that any record or portion thereof generated by the
> system established under this section be recorded at or transferred
> to a facility owned, managed, or controlled by the United States
> or any State or political subdivision thereof; or
> (2) use the system established under this section to establish any
> system for the registration of firearms, firearm owners, or firearm
> transaction or dispositions, except with respect to persons, prohib-
> ited by section 922 (g) or (n) of title 18, United States Code or
> State law, from receiving a firearm.

107 Stat. at 1542. The clear intent of Congress in adopting this provision was to prohibit the establishment of a firearm registry. The title of the provision, the relation between subparagraphs (1) and (2), and the legislative history support our conclusion.

"Titles have a communicative function. . . . Since the title of an act is essentially a part of the act and is itself a legislative expression of the general scope of the bill, it is proper to consider it in arriving at the intent of the legislature." 2A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 47.03 (5th ed. 1992) ("Sutherland"). Here, the title explicitly limits the scope of the provision to the prohibition of the establishment of a firearm registry.

Likewise, the interrelation between subparagraphs (1) and (2) confirm our view that the provision is intended to prohibit the use of NICS in establishing a firearm registry. Section 103(i)(1) is a specific prohibition of a particular method in establishing a registry. Section 103(i)(2) establishes a general prohibition against using the system to establish a registry. Drafting a statute that includes a specific provi-

---

*Editor's Note: The Department of Justice published a Privacy Act System Notice for the NICS on 11/25/98 that exempts the NICS from the record access provisions of the Privacy Act, 63 Fed. Reg. 65,060 (1998). Privacy Act requests for non-exempt records must comply with the alternative procedure set forth in the notice.

sion followed by a general one can be explained as a common "technique designed to save the legislature from spelling out in advance every contingency in which the statute could apply." 2A Sutherland at § 47.17.

Finally, the legislative history supports the conclusion we have reached based on the text of the statute. The report of the House Committee on the Judiciary explained that section 103(i) "prohibits any Federal department, agency, officer, or employee from using the system or any part thereof to establish a registry of firearms, firearms owners, or firearms transactions" except with respect to persons falling within the ambit of 18 U.S.C. § 922(g) or (n). H.R. Rep. No. 103–344, at 20 (1993). The report thus confirms that the sole purpose of section 103(i) was to prohibit the use of NICS information for the purpose of establishing firearm registries.

## III. *The Attorney General May Request Information From Federal Agencies*

The Brady Act directs that the Attorney General gather the necessary information in establishing NICS. Section 103(e)(1) states:

> AUTHORITY TO OBTAIN OFFICIAL INFORMATION.—
> Notwithstanding any other law, the Attorney General may secure directly from any department or agency of the United States such information on persons for whom receipt of a firearm would violate subsection (g) or (n) of section 922 of title 18, United States Code or State law, as is necessary to enable the system to operate in accordance with this section. On request of the Attorney General, the head of such department or agency shall furnish such information to the system.

107 Stat. at 1542.

Section 105 states that the Brady Act "shall not be construed to alter or impair any right or remedy" under the Privacy Act. 107 Stat. at 1543. You have asked whether the Privacy Act places any limitation on the Attorney General's express authority in section 103(e)(1) to request from federal agencies all information identifying individuals who fall within the categories of persons prohibited from possessing firearms. We do not believe that it does.

The plain meaning of the phrase "notwithstanding any other law," in section 103(e)(1) convinces us that Congress did not intend for the Privacy Act or any other law to prohibit the Attorney General from gathering the critical information necessary to create a registry of individuals prohibited from owning a firearm. NICS serves the Brady Act's fundamental purpose of identifying those individuals who are not permitted by law to own a firearm. Limiting the Attorney General in identifying those individuals would be contrary to the purpose of the Act. In our view, the effect of the "notwithstanding any other law" language in section

103(e)(1) is that the Privacy Act does not apply to disclosures by agencies to the Attorney General for the purpose of putting information *into* NICS. The effect of section 105 is that the Privacy Act regulates disclosures *out of* NICS.

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*