# United States Court of Appeals
# for the Federal Circuit

---

**TIMOTHY ALLEN RAINEY,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF STATE,**
*Intervenor*

---

2015-3234

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-14-0898-W-1.

---

Decided: June 7, 2016

---

LARRY STEVEN GIBSON, Shapiro Sher Guinot & Sandler, Baltimore, MD, argued for petitioner. Also represented by ANASTASIA L. MCCUSKER, ANNA ZAPPULLA SKELTON.

JEFFREY GAUGER, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by BRYAN G. POLISUK.

EMMA BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for intervenor. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; NIELS ALEXANDER VON DEUTEN, Office of the Legal Adviser, Office of Employment Law, United States Department of State, Washington, DC.

———————————

Before O'MALLEY, CLEVENGER, and BRYSON, *Circuit Judges.*

BRYSON, *Circuit Judge.*

I

Petitioner Timothy Allen Rainey is a Supervisory Foreign Affairs Officer in the Bureau of African Affairs, Office of Regional Security Affairs, at the U.S. Department of State. In 2013, he was serving as a contracting officer representative for the Africa Contingency Operations Training and Assistance program. On October 13, 2013, Dr. Rainey's supervisor, the Director of the Office of Regional and Security Affairs, relieved him of his duties as contracting officer representative.

Following that action, Dr. Rainey filed a complaint with the Office of Special Counsel alleging that his duties as contracting officer representative had been taken away because he had refused his supervisor's order to tell a contractor to rehire a terminated subcontractor. Dr. Rainey argued that his refusal was based on his view that carrying out the order would have required him to violate Federal Acquisition Regulation ("FAR") section 1.602-2(d), 48 C.F.R. § 1.602-2(d), by improperly interfering with personnel decisions of a prime contractor and requiring the prime contractor to operate in conflict with the terms of the contract.

The Office of Special Counsel closed its investigation without granting relief. Dr. Rainey then filed an Individual Right of Action appeal with the Merit Systems Protection Board. He alleged that by removing him from his duties as contracting officer representative after he "refuse[d] to obey an order that would require me to violate the law," the agency had committed a prohibited personnel practice under the "right-to-disobey" provision of the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b)(9)(D).

The administrative judge initially ruled that the Board had jurisdiction to consider Dr. Rainey's appeal and began a hearing on the merits. Then, before the second day of the hearing, the Supreme Court issued a decision in *Department of Homeland Security v. MacLean*, 135 S. Ct. 913 (2015). In *MacLean*, the Court held that the word "law" in the "right-to-disclose" provision of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)(A), refers only to a statute, and not to a rule or regulation. Based on that decision, the administrative judge ruled that the term "a law" in section 2302(b)(9)(D) should also be interpreted to refer only to a statute, and not to a rule or regulation. Because Dr. Rainey's claim was that he had refused his supervisor's order because it would have required him to violate a regulation, the administrative judge held that section 2302(b)(9)(D) did not apply to his claim. Based on that ruling, the administrative judge held that the Board lacked jurisdiction over the appeal.

Dr. Rainey petitioned the full Board for review, but the Board denied the petition. The Board agreed with the administrative judge that, in light of *MacLean*, "the right-to-disobey provision at section 2302(b)(9)(D) extends only to orders that would require the individual to take an action barred by statute." Dr. Rainey now appeals to this court, raising the same legal issue regarding the scope of section 2302(b)(9)(D).

## II

The right-to-disobey provision of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(9)(D), protects covered employees from retaliation "for refusing to obey an order that would require the individual to violate a law." Dr. Rainey argues that Congress could not have intended to limit section 2302(b)(9)(D) to situations in which the employee refuses to obey an order that would violate a statute. According to Dr. Rainey, Congress also intended to extend protection to an employee who refuses to violate a regulation, such as the FAR. He acknowledges that in the *MacLean* case, the Supreme Court construed the term "law" in section 2302(b)(8), the right-to-disclose provision of the Act, to exclude rules and regulations. But he argues that the Supreme Court's restrictive reading of the term "law" in section 2302(b)(8) is not inconsistent with his broad reading of the term "a law" in section 2302(b)(9) to include rules and regulations.

Section 2302(b)(8)(A) of the Whistleblower Protection Act, which was at issue in *MacLean*, provides that a federal employee may disclose information that the employee reasonably believes evidences a violation of any law, rule, or regulation or gross mismanagement, a gross waste of funds, an abuse of authority or a substantial and specific danger to public health or safety "if such disclosure is not specifically prohibited by law, and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs." 5 U.S.C. § 2302(b)(8)(A). The question before the Court in *MacLean* was whether a disclosure prohibited by an agency regulation was "prohibited by law."

The Court answered that question in the negative in *MacLean*, holding that a disclosure in violation of an agency regulation does not qualify as a disclosure that is "specifically prohibited by law." The Court noted that the

statute elsewhere refers to violations of "any law, rule, or regulation." Based on those references, the Court inferred that Congress did not intend for the term "law" by itself to encompass rules and regulations.

In so holding, the Court relied on its prior decision in *Department of the Treasury, IRS v. FLRA*, 494 U.S. 922 (1990), in which the Court had rejected an argument that the term "laws" in one section of a statute meant the same thing as the phrase "law, rule, or regulation" in another section of the same statute. The Court noted that in that case it had held that "a statute that referred to 'laws' in one section and 'law, rule, or regulation' in another 'cannot, unless we abandon all pretense at precise communication, be deemed to mean the same thing in both places.'" *MacLean*, 135 S. Ct. at 920 (quoting *Dep't of the Treasury, IRS*, 494 U.S. at 132).

The *MacLean* Court further noted that a broad interpretation of the term "law" in section 2302(b)(8)(A) could defeat the purpose of the whistleblower statute. If "law" were construed to include agency rules and regulations, "then an agency could insulate itself from the scope of Section 2302(b)(8)(A) merely by promulgating a regulation that 'specifically prohibited' whistleblowing." *MacLean*, 135 S. Ct. at 920.

It is difficult to reconcile the Supreme Court's analysis in the *MacLean* case with Dr. Rainey's position in this one. In construing the term "law," standing alone, the Court in *MacLean* placed great weight on the fact that section 2302(b)(8)(A) referred at one point to "any law, rule, or regulation," but in the provision before the Court referred only to a disclosure "prohibited by law." The Court regarded the difference between the two formulations as strong evidence that Congress did not intend for the term "law" to be as broad as the phrase "law, rule, or regulation."

The same analysis applies here. Paragraph (b)(9) is, after all, the very next paragraph of section 2308 after paragraph (b)(8), the provision that was at issue in *Mac-Lean*. Like paragraph (b)(8), paragraph (b)(9) uses the words "law, rule, or regulation" (in subparagraph (b)(9)(A)), but then uses only the term "a law" in subparagraph (b)(9)(D), the provision at issue in this case. As in the *MacLean* case, the use of those two different formulations in paragraph (b)(9) strongly suggests that Congress did not intend for the term "a law" to cover the same subject matter as the term "law, rule, or regulation." Instead, as the Supreme Court held in *MacLean*, the difference indicates that the term "law," standing alone, was meant to refer to statutes only, and not to rules, regulations, or statutes. *See MacLean*, 135 S. Ct. at 919 ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.").

Dr. Rainey seeks to distinguish *MacLean* on two grounds, neither of which is persuasive. First, he argues that the Supreme Court in *MacLean* relied on the fact that the phrase "law, rule, or regulation" appeared in the same subparagraph of section 2302(b)(8) as the phrase "prohibited by law," and that the Court regarded the use of the two different phrases in close association as evidence that Congress meant to assign them different meanings. In section 2302(b)(9), the respective terms "law, rule, or regulation" and "a law" appear in the same paragraph, but not in the same subparagraph.

That argument has little force. The phrase "law, rule, or regulation" appears just eight lines above the term "a law" in section 2302(b)(9), while that phrase appears four lines above the phrase "prohibited by law" in section 2302(b)(8). In both instances, the use of different formulations in the same paragraph of the statute gives rise to the natural inference that Congress meant for the two formulations to have different meanings. Indeed, in other

cases, the Supreme Court has drawn the same inference of different intended meaning when Congress uses particular language in one section of a statute but omits it in another section of the same statute. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 439-40 (1983) ("[I]t is a general principle of statutory construction that when one statutory section includes particular language that is omitted in another section of the same Act, it is presumed that Congress acted intentionally and purposely."); *Dep't of the Treasury, IRS*, 494 U.S. at 132. That principle applies *a fortiori* in a case such as this one, where the two different formulations appear not only in the same statute, but in the same section, subsection, and paragraph of the statute.

A corollary of that principle is that normally "identical words used in different parts of the same act are intended to have the same meaning." *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994); *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993); *Nat'l Org. of Veterans Advocates, Inc. v. Secretary of Veterans Affairs*, 260 F.3d 1365, 1379 (Fed. Cir. 2001). That principle applies with special force when "the identical words are used in the same statutory section," *CUNA Mut. Life Ins. Co. v. United States*, 169 F.3d 737, 741 (Fed. Cir. 1999), and is "at its most vigorous when a term is repeated within a given sentence," *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1708 (2012); *Brown v. Gardner*, 513 U.S. 115, 118 (1994). In this case, the term "law," which has been conclusively construed to mean "statute" in paragraph (8)(A) of section 2302(b) appears within the same statutory sentence in paragraph (9)(D) of that same subsection. The use of the same term in such close proximity gives rise to a strong inference that the term was intended to have the same meaning in both places.

Second, Dr. Rainey argues that the Supreme Court in *MacLean* relied on the policy consideration that a broad

interpretation of the term "law" in section 2302(b)(8) would have permitted agencies to insulate themselves from disclosures simply by promulgating regulations specifically prohibiting whistleblowing. The Court's reference to that policy consideration, however, was clearly subsidiary to its textual analysis, which is sufficiently broad to govern this case.

Dr. Rainey makes the creative argument that, at least in this context, the term "a law" is actually broader than the phrase "law, rule, or regulation." He contends that the latter phrase would have excluded matters such as agency policies and court orders, but that such matters could be encompassed by the words "a law." Thus, Dr. Rainey explains that Congress may have elected not to use the formulation "law, rule, or regulation" in section 2308(b)(9)(D) because it wanted to give an employee protection for refusing to commit acts that would be contrary to, for example, a court order or an informal agency policy falling short of a rule or regulation.

The problem with that argument is that if Congress had intended to protect employees who violated proscriptions other than laws, rules, and regulations, it could readily have done so simply by using a term such as "unlawfully" in section 2302(b)(9)(D), so that the statute would protect an employee from retaliation "for refusing to obey an order that would require the individual to act unlawfully." In fact, Congress used the term "lawfully" in section 2302(b)(9)(B), another sub-paragraph of section 2302(b)(9), which suggests that Congress had something else in mind when it chose not to use the formulation "unlawfully" in section 2309(b)(9(D), but instead chose the term "a law."

A textual point that provides further support for the Board's construction of the statute is that section 2302(b)(9)(D) uses the formulation "a law," not simply the term "law." While the term "law" might be deemed, in

some circumstances, to refer to any source of legal authority, including rules, regulations, or court orders, the term "a law" is less readily construed in that manner. Thus, for example, while it is conceivable that a court order could be understood to be encompassed within the scope of providing protection for an individual who refused to obey an order that would require him "to violate the law," it is much less likely that a court order would be understood to be "a law," and thus within the scope of the language of section 2302(b)(9)(D).

Dr. Rainey makes a strong plea that the distinction between statutory proscriptions and other legal rules would not make sense in this context, as section 2302(b)(9)(D) would extend or deny protection depending on whether the legal rule at issue had been codified as a statute or simply adopted by an agency, pursuant to its statutory authority to promulgate regulations. The result, according to Dr. Rainey, would be that some important regulations, such as the FAR, would be left out of the coverage of section 2302(b)(9)(D), even though there is no clear indication in the legislative history that Congress intended to draw such a line.

While it is true that the legislative history does not explicitly address the issue before the court in this case, the background of the provision in section 2302(b)(9)(D) is nonetheless enlightening. Prior to the enactment of that statute, federal employees were not entitled to refuse to comply with orders of their agency superiors, even if they believed the orders were unlawful. Section 2302(b)(9)(D) was controversial, as it conflicted with the longstanding principle of "comply, then grieve," i.e., the principle that employees should not take it upon themselves to decide which agency orders to follow, but should follow the orders and then challenge the lawfulness of the orders afterwards.

At a House hearing on the bill that became the Whistleblower Protection Act, statements by the Senior Executives Association and the Federal Managers Association cautioned against the adoption of a broad general rule permitting employees to disobey orders they believed to be unlawful. *See Hearing on H.R. 25 Before the H. Subcomm. on Civil Serv. of the H. Comm. on Post Office and Civil Serv.*, 100th Cong. 197, 202 (1987) (statement of Carol Bonosaro, President, Senior Executives Association) ("We continue to believe . . . that, with the exception of life-threatening situations, an employee should obey the direction of his or her superior when given an order and challenge the order later."); *id.* at 204, 206 (statement of David W. Sanasack, Executive Director, Federal Managers Association) ("[T]he general rule in this area of labor law is, quote, act now, grieve later. Employees must follow the orders of their supervisors. If they have a problem with that order, they have avenues to address their concerns, either through a collective bargaining agreement or an agency grievance procedure. To suggest that there is some right inherent in failing to follow orders will upset the balance we talked about earlier.").

The Joint Explanatory Statement that was provided to the House of Representatives to explain the compromises agreed upon with the Senate also noted that the provision protecting employees "in their right to refuse to obey an order that would require them to violate a law" was meant "to achieve a balance between the right of American citizens to a law-abiding government and the desire of management to prevent insubordination." 134 Cong. Rec. 27855 (Oct. 3, 1988). In light of that legislative background, it is not surprising that Congress would have legislated cautiously in this area. Contrary to Dr. Rainey's position, it is therefore not "absurd" to conclude that Congress may have decided to limit the protection for persons disobeying agency orders to those orders that were contrary to a statute.

Dr. Rainey makes a final argument that the FAR is a particularly important regulation that has the full force and effect of law and therefore should be regarded as "a law" within the meaning of section 2302(b)(9)(D) even if other regulations do not qualify as "laws" for purposes of that statute. The first problem with that argument is that substantive agency regulations that are promulgated pursuant to statutory authority typically have the "force and effect of law," *see Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015); *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979), so that feature does not distinguish the FAR from other more quotidian legislative rules. The second problem with the argument is that, as noted, there is nothing in the section 2302(b)(9) that even hints at a distinction between important regulations and less important regulations; to the contrary, the statute distinguishes between "a law" and "law, rule, or regulation," and the FAR clearly falls on the "regulation" side of that divide.

Dr. Rainey's arguments are heavy on policy reasons why Congress likely would not have wanted to confine the scope of section 2302(b)(9)(D) to statutes. Those policy considerations are not without force, and it may be that the statute should be extended to cover rules, regulations, and other sources of legal authority. If so, Congress is free to alter the scope of the statute. But we are not so free. Between the restrictive language chosen by Congress and the closely analogous decision of the Supreme Court in *MacLean*, we are constrained to hold that the protection granted by section 2302(b)(9)(D) is limited to orders that are contrary to a statute, and does not encompass orders that are contrary to a regulation. We therefore uphold the Board's interpretation of the statute, which led it to conclude that it lacks jurisdiction over this case.

**AFFIRMED**