# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TAMARA WILLIAMS,
            Appellant,

        v.

DEPARTMENT OF VETERANS
   AFFAIRS,
            Agency.

DOCKET NUMBER
DC-1221-16-0475-W-2

DATE: September 8, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Michelle F. Bercovici</u>, Esquire, Washington, D.C., for the appellant.

<u>David R. Scruggs</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the petition for review, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2    The appellant was a GS-14 Contract Specialist for the agency who resigned effective December 31, 2015. *Williams v. Department of Veterans Affairs*, MSPB Docket No. DC-1221-16-0475-W-2, Appeal File (W-2 AF), Tab 10 at 8. On April 6, 2016, the appellant filed an IRA appeal and requested a hearing. *Williams v. Department of Veterans Affairs*, MSPB Docket No. DC-1221-16-0475-W-1, Initial Appeal File (IAF), Tab 1 at 2, 6-11. The administrative judge ordered the appellant to list the protected disclosures and personnel actions that she was claiming and identify the specific places in her Office of Special Counsel (OSC) complaint in which she raised these issues. W-2 AF, Tabs 35-36. He instructed her to produce the lists in a particular format, specified the information that she was to include, and emphasized the need for brevity. W-2 AF, Tab 35. The appellant responded with a seven-page document setting forth 12 disclosures and 17 personnel actions.[2] W-2 AF, Tab 41 at 5-11. She included nearly 900 pages of exhibits. W-2 AF, Tab 41 at 12-327, Tabs 42-46.

¶3    The case was subsequently reassigned to a different administrative judge, who issued an initial decision dismissing the appeal for lack of jurisdiction because the appellant failed to make a nonfrivolous allegation that she made a protected disclosure. W-2 AF, Tab 50, Tab 51, Initial Decision (ID) at 1, 10. The administrative judge did not address the list of personnel actions that the appellant submitted in response to the jurisdictional order. Instead, he addressed the appellant's original OSC complaint in which she raised several alleged disclosures of improprieties in the agency's handling of contracts. ID at 5-6. The

---

[2] The appellant raised some of these alleged personnel actions as part of a hostile work environment claim, rather than as individual personnel actions in their own right. W-2 AF, Tab 41 at 10-11.

administrative judge analyzed these claims and concluded that the appellant failed to raise a nonfrivolous allegation that she made any protected disclosures. ID at 6-10.

¶4        The appellant has filed a petition for review stating that the initial decision was in error and requesting that the Board hold the processing of her petition in abeyance pending the outcome of her equal employment opportunity complaints. Petition for Review (PFR) File, Tab 1at 4-7. She requests, alternatively, a 30-day extension to file a brief in support of her petition. *Id*. at 6. The agency has filed a response. PFR File, Tab 3.

## ANALYSIS

<u>The appellant's request to hold the processing of her claim in abeyance is denied.</u>

¶5        In her petition for review, the appellant requests that the Board refrain from ruling on her petition until the Equal Employment Opportunity Commission (EEOC) has issued a final decision in a related case. PFR File, Tab 1 at 6. She asserts that the resolution of her claims before the EEOC may render moot or resolve the issues in the instant appeal. *Id*. We disagree. Although the appellant's equal employment opportunity complaint may pertain to the same personnel actions at issue in her IRA appeal, the EEOC lacks jurisdiction over whistleblower claims, *Ron W. v. Department of Veterans Affairs*, EEOC Appeal No. 0120161855, 2016 WL 6156255, *3 (Oct. 11, 2016), and so the issues to be decided by the Board and the EEOC are necessarily distinct. Considering the Board's statutory mandate to expedite the proceedings before it, 5 U.S.C. § 7701(i)(4), we find insufficient basis to grant the appellant's request. Accordingly, her request is denied. The appellant's request for an extension to file a supplemental briefing is also denied. *See* 5 C.F.R. § 1201.114(b) (explaining that a petition for review must state a party's objection to the initial decision, including all of the party's factual and legal arguments).

<u>The appellant has established jurisdiction over her appeal.</u>

¶6 The Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before OSC and makes nonfrivolous allegations that: (1) she engaged in activity protected under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D); and (2) the activity was a contributing factor in the agency's decision to take, fail to take, or threaten to take a personnel action as defined by 5 U.S.C. § 2302(a). *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014). Once an appellant has established Board jurisdiction over her appeal, she is entitled to a hearing on the merits in which she will have the opportunity to prove her claim by preponderant evidence. *Iyer v. Department of the Treasury*, 95 M.S.P.R. 239, ¶ 6 (2003), *aff'd*, 104 F. App'x 159 (Fed. Cir. 2004).

¶7 A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016). To satisfy the contributing factor criterion at the jurisdictional stage, an appellant only need raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *Id.*, ¶ 13. Under the knowledge/timing test, an appellant may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1); *Salerno*, 123 M.S.P.R. 230, ¶ 13. In addition to the knowledge/timing test, there are other possible ways for an appellant to satisfy the contributing factor criterion. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶¶ 14-15 (2012) (explaining that other evidence relevant to the

contributing factor criterion includes the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those officials had a desire or motive to retaliate).

¶8        On review, the appellant asserts, without explanation, that the initial decision is based on an erroneous interpretation of the law and contains erroneous findings of material fact.  PFR File, Tab 1 at 4-6.  The appellant's bare assertion fails to meet the Board's requirements for the content of a petition for review. *See* 5 C.F.R. § 1201.114(b).  It constitutes mere disagreement with the initial decision and therefore provides no basis for us to disturb it.  *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980), *review denied per curiam*, 669 F.2d 613 (9th Cir. 1982).  Nevertheless, under 5 C.F.R. § 1201.115(e), notwithstanding the sufficiency of a petition for review, the Board reserves the authority to consider any issue in an appeal before it.  Based on our review of the record in this case, we find that the appellant has, in fact, established jurisdiction over her appeal and that a remand is warranted.  *See Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 7 (2015) (finding that the issue of jurisdiction is always before the Board and may be raised at any time), *aff'd*, 640 F. App'x 864 (Fed. Cir. 2016).

¶9        In his initial decision, the administrative judge remarked on the appellant's voluminous jurisdictional filings and stated that the Board is not obliged to pore through them to make sense of her claims, and that one whose submissions lack clarity runs the risk of being found not to have met her burden.  ID at 5 & n.2.  Although we agree with the administrative judge's remarks in principle, he appears to have overlooked the listing of disclosures and personnel actions that the appellant filed in response to the jurisdictional order.  W-2 AF, Tab 41 at 5-11.  We find that the appellant prepared these lists in accordance with the administrative judge's instructions and that they clearly set forth all the elements

of her claims as necessary for us to make a jurisdictional determination.[3] W-2 AF, Tabs 35-36, Tab 41 at 5-11.

*Disclosure 1*

¶10    The appellant alleges that she made a protected disclosure several times between March 22 and May 9, 2013, concerning work on expired construction contracts.  W-2 AF, Tab 41 at 5, Tab 44 at 6-7.  Specifically, she claims she disclosed that the agency "improperly ordered to open 20 expired contracts, make modifications to the original scope of work, and extend the period of performance dates."  W-2 AF, Tab 41 at 5.  According to the appellant, the agency's actions violated, among other things, the "bona fide needs rule" of 31 U.S.C. § 1502, which provides that "[t]he balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of availability . . . ."  *Id.* at 5 & n.2.  In other words, "[f]iscal year appropriations may properly be obligated only for bona fide needs actually existing within the fiscal year sought to be charged."  33 Comp. Gen. 90 (Aug. 20, 1953).  The appellant explains that, if the agency uses expired funds to pay for additional work not required in the original contracts, it may violate the

---

[3] Although our review of this case is at the jurisdictional stage, we note that certain of the appellant's disclosures appear to reflect her belief that, if she had followed some of the agency's instructions, she would have had to violate a law, rule, or regulation.  At the time that the appellant filed this appeal, 5 U.S.C. § 2302(b)(9)(D) made it a prohibited personnel practice to take an action against an employee for "refusing to obey an order that would require the individual to violate a law."  The U.S. Court of Appeals for the Federal Circuit considered this provision and held that "law" only included statutes, and not rules and regulations.  *See Rainey v. Merit Systems Protection Board*, 824 F.3d 1359, 1364-65 (Fed. Cir. 2016).  However, on June 14, 2017, the President signed the Follow the Rules Act into law.  Pub. L. No. 115-40, 131 Stat. 861 (2017).  The Act amends section 2302(b)(9)(D) to provide whistleblower protection for individuals who refuse to obey an order that would require the violation of a law, rule, or regulation.  Nevertheless, the Board has determined that this expansion does not apply retroactively to cases pending at the time the Act was enacted, and so it does not change the analysis in this case.  *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶¶ 12-19.

bona fide needs rule. W-2 AF, Tab 41 at 5 n.2. We find that the appellant has made a nonfrivolous allegation that she reasonably believed that she disclosed a violation of law.[4]

*Disclosure 2*

¶11    The appellant alleges that on June 25 and 26, 2013, she disclosed that an agency official signed and issued a notice to proceed for contactors to perform additional work even though this official lacked delegated contracting authority. W-2 AF, Tab 41 at 5. She claims that the official's actions violated 48 C.F.R. § 1.602-3(a), defining "unauthorized commitment" as an agreement that is not binding solely because the Government representative who made it lacked the authority to do so. *Id*. However, we find that this subsection is definitional in nature and is therefore not capable of being violated. Furthermore, as set forth in the following subsection, there is no prohibition against creating unauthorized commitments. 48 C.F.R. § 1.602-3(b). Therefore, the appellant has not made a nonfrivolous allegation that she reasonably believed the agency committed any wrongdoing with respect to an unauthorized commitment. Nevertheless, construing the appellant's allegation generously, it appears that she may be alleging a violation of 48 C.F.R. § 836.213-70(a),[5] which provides that a notice to proceed must be provided by the "contracting officer" for construction contractors to begin work. A contracting officer is a person with the authority to enter into, administer, or terminate contracts and to make related determinations and findings. 48 C.F.R. § 2.101. The appellant asserts that the official who

---

[4] The appellant also alleges that the agency's actions violated other unspecified "principles," including unspecified Federal Acquisition Regulations (codified in relevant part at 48 C.F.R. chapters 1, 8). W-2 AF, Tab 41 at 5. This vague, conclusory allegation, even read in conjunction with the supporting materials that the appellant cites, does not rise to the level of a nonfrivolous allegation. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016).

[5] *See* 73 Fed. Reg. 2712-01, 2760 (Jan. 15, 2008). This regulation is no longer in effect. *See* 84 Fed. Reg. 9968-01, 9972 (Mar. 19, 2019).

issued the notice to proceed was not a contracting officer and lacked delegated authority to act as one.  W-2 AF, Tab 41 at 5.  We therefore find that the appellant made a nonfrivolous allegation that she disclosed what she reasonably believed to be a violation of 48 C.F.R. § 836.213-70(a).  *See Kalil v. Department of Agriculture*, 96 M.S.P.R. 77, ¶ 16 (2004) (finding that it is not always necessary to identify a specific law, rule, or regulation to make a nonfrivolous allegation of a protected disclosure concerning a violation of the same).

*Disclosure 3*

¶12        The appellant alleges that on July 31 and August 1, 2013, she filed a hotline complaint with the agency's Office of Inspector General, alleging various acts of agency malfeasance.  W-2 AF, Tab 41 at 6.  Under 5 U.S.C. § 2302(b)(9)(C), disclosing information to an Inspector General, in accordance with applicable provisions of law, constitutes protected activity without regard to the contents of the disclosure.  We therefore find that the appellant made a nonfrivolous allegation that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C).

*Disclosure 4*

¶13        The appellant alleges that, on August 6 and 23, 2013, she disclosed that two officials were serving in GS-13 contractor positions, and were acting as managers or supervisors, without the required credentials (Federal Acquisition Certifications in Contracting).  W-2 AF, Tab 41 at 6.  According to the appellant's complaint to OSC, this violates 41 U.S.C. § 433,[6] which authorizes the Office of Federal Procurement Policy (OFPP) to establish requirements for jobs in the 1102 occupational series.  *Id*. at 6, 18.  We find that the law that the appellant cites merely authorizes the OFPP to establish qualifications for the 1102 job series, and could therefore not have been violated as she alleges. Furthermore, we have reviewed OFPP's related materials, but we were not able to

---

[6] Section 433 of Title 41 of the United States Code is now at 41 U.S.C. § 1703.

locate a requirement that these GS-13 positions require the certifications in question. Office of Management and Budget, OFPP Letter 05-01, ¶ 8(b)(1)-(2) (Apr. 15, 2005), https://obamawhitehouse.archives.gov/omb/procurement_policy_ letter_05-01 (last visited Sept. 7, 2023). We therefore find that the appellant has failed to make a nonfrivolous allegation that she reasonably believed that this disclosure evidenced a violation of law or any other category of Government wrongdoing under 5 U.S.C. § 2302(b)(8)(A).

*Disclosure 5*

¶14 The appellant alleges that on September 24 and October 3, 2013, she disclosed that the agency was ordering her to sign a contract for a procurement that had not been conducted in accordance with the Federal Acquisition Regulations and in accordance with a recent audit from the Office of Inspector General. W-2 AF, Tab 41 at 6. She alleges that this disclosure evidenced a violation of 48 C.F.R. §§ 1.602-1(b), 803.104-7(a), 803.602,[7] and Department of Veterans Affairs, Veterans Health Administration (VHA) Handbook 1002.02, Minor Construction Program.[8] W-2 AF, Tab 41 at 6-7. According to the appellant, the agency attempted to coerce her into signing a contract that was missing eight required pieces of information. W-2 AF, Tab 45 at 26. The record does not appear to contain adequate information for us to determine whether the contract in question actually required these eight pieces of information, or if they were in fact missing, as the appellant alleges. However, the appellant is not required to prove her claim at the jurisdictional stage—only to make a

---

[7] Sections 803.104-7(a), 803.602 of Title 48 of the Code of Federal Regulations, *see* 73 Fed. Reg. 2712-01, 2731 (Jan 15, 2008), are no longer in effect, *see* 83 Fed. Reg. 16206-01, 16208 (Apr. 16, 2018).

[8] The VHA has since rescinded the November 8, 2012 version of the Handbook in effect at the time of the appellant's alleged disclosures. VHA Directive 1002.02, VHA Minor Construction Program at 1 (Aug. 23, 2022), https://www.va.gov/vhapublications/ViewP ublication.asp?pub_ID=9917 (last visited Sept. 7, 2023).

nonfrivolous allegation thereof. *Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 9, *aff'd,* 157 F. App'x 260 (Fed. Cir. 2005); 5 C.F.R. § 1201.57. We find that if the facts that the appellant alleges are true, she could reasonably have concluded that the agency was ordering her to violate at least 48 C.F.R. §§ 1.602-1(b), which provides that no contract shall be entered into unless the contracting officer ensures that all legal requirements and other applicable procedures have been met. *See Reid v. Merit Systems Protection Board*, 508 F.3d 674, 677 (Fed. Cir. 2007) (finding that protected disclosures may relate to imminent violations of law not yet carried out).

*Disclosure 6*

¶15 The appellant alleges that between October 8 and 11, 2013, she disclosed that she was issued a performance appraisal for a period of less than 90 days. W-2 AF, Tab 41 at 7. She claims that the agency's actions violated 5 U.S.C. § 2302(b)(12), the applicable collective bargaining agreement, and provisions of VA Directive 5013. *Id.* It is not clear to us how the appellant's allegations, even if true, could evidence a violation of 5 U.S.C. § 2302(b)(12), which prohibits personnel actions that violate laws concerning the merit system principles of 5 U.S.C. § 2301(b). However, we find that the appellant might have reasonably believed that the agency's actions were in violation of VA Directive 5013/8, Pt. I, § 7(a), https://www.va.gov/vapubs/viewPublication.asp?Pub_ID=211 (last visited Sept. 7, 2023), which provides that "[t]he minimum appraisal period is 90 calendar days under a performance plan." The record seems to show that the agency issued the appellant two interim performance appraisals for periods of less than 90 days. W-2 AF, Tab 41 at 294, 297. Although the Directive appears to apply the 90-day minimum appraisal period only to final appraisals, we find that the appellant, who is presumably not well versed in Federal personnel law, could nevertheless have reasonably understood the requirement to apply to interim

appraisals as well.[9]  *See Mithen v. Department of Veterans Affairs*, [122 M.S.P.R. 489](), ¶ 24 (2015) (finding that a disclosure that does not identify any actual wrongdoing under [5 U.S.C. § 2302](b)(8) is nevertheless protected if the appellant reasonably believed that it did), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016).  We therefore find that the appellant has made a nonfrivolous allegation of a protected disclosure based on her belief that the agency had violated VA Directive 5013/8, Pt. I, § 7(a).

### Disclosure 7

¶16    The appellant alleges that on October 31 and November 1, 2013, she disclosed various acts of agency malfeasance to the Office of Inspector General. W-2 AF, Tab 41 at 7.  We find that the appellant's disclosure of information to an Inspector General would constitute protected activity under [5 U.S.C. § 2302](b)(9)(C).[10]  We therefore find that she has made a nonfrivolous allegation that these communications with the Inspector General constituted protected activity.

### Disclosure 8

¶17    The appellant alleges that on January 16, 2014, she disclosed to agency officials that an agency employee had been acting outside the scope of her authority and misrepresenting herself as a contracting officer before the U.S. Civilian Board of Contract Appeals.  W-2 AF, Tab 41 at 8.  She alleges that, in this same disclosure, she reported that her reviewing official had downgraded her

---

[9] Our finding is supported by the absence of any clear indication on the performance appraisal documents that they constituted interim ratings.  W-2 AF, Tab 41 at 292-98.  Furthermore, when the appellant raised her concerns to her superior, the Director of Contracting, it appears that he was unable to provide her an answer without assistance from Human Resources.  W-2 AF, Tab 46 at 490-91.

[10] The language of [5 U.S.C. § 2302](b)(9)(C) was expanded by the National Defense Authorization Act of 2018, Pub. L. No. 115-91, 131 Stat. 1238 (2017).  This expansion, however, does not affect the analysis here.

performance evaluation based on the improper "unacceptable" rating given by her rating official. *Id.* The appellant explained in her OSC complaint that the rating official's mid-year rating had been retracted, but the reviewing official relied upon it despite that fact. *Id.* at 18.

¶18 Regarding the first of these allegations, we find that, if an agency official had misrepresented her position to the U.S. Civilian Board of Contract Appeals, the appellant could reasonably conclude that some law, rule, or regulation had been violated. *Kalil*, 96 M.S.P.R. 77, ¶ 16. We therefore find that she has made a nonfrivolous allegation of the same.

¶19 As to the second allegation, it appears that the gravamen of this claim is that the appellant believed that her performance rating was the product of whistleblower retaliation. W-2 AF, Tab 46 at 21. In other words, she is alleging that she disclosed a violation of 5 U.S.C. § 2302(b)(8). Whether the appellant can prove that she had a reasonable belief of this may depend largely on whether she can prove by preponderant evidence that she reasonably believed that any of the activities or disclosures discussed above were protected. In any event, we find that she has alleged sufficient facts at this stage to support a nonfrivolous allegation.

*Disclosure 9*

¶20 The appellant alleges that between May 21 and 28, 2014, she disclosed that the Director of Contracting assigned her to take over the responsibilities of two positions—supervisor of the Washington, D.C. Commodities Team and supervisor of the Martinsburg, West Virginia Commodities Team. W-2 AF, Tab 41 at 8. She claims that this action was improper because the Director failed to provide her with "adequate resources or compensation" and failed to document the action officially via a Standard Form 50 or 52. *Id.* She also asserts that the Director's actions were contrary to Office of Personnel Management (OPM) requirements and were in retaliation for protected whistleblowing. *Id.* The appellant has not cited to any law, rule, regulation, or practice that would prohibit the agency from

assigning her additional employees to supervise without additional compensation. Nor has she explained what OPM "requirements" were violated or why she believes that the agency's action required additional documentation. The appellant has given us no reason to doubt that assigning her this additional work was, in itself, within the agency's sound discretion and lawful authority. Nevertheless, to the extent that the appellant reasonably believed that the assignment of additional duties was retaliatory under 5 U.S.C. § 2302(b)(8), and she actually disclosed this belief, her disclosure may have been protected. We therefore find that she has raised a nonfrivolous allegation in connection with this disclosure.

*Disclosure 10*

The appellant alleges that on June 16, 2014, she disclosed that the Director would be violating the agency's whistleblower protection policy by issuing a letter of counseling to a Junior Contract Specialist because she believed the letter to be retaliatory or otherwise improper. W-2 AF, Tab 41 at 8. The Director had ordered the appellant to prepare the letter based on that Contract Specialist's alleged failure to follow instructions. W-2 AF, Tab 46 at 56. The appellant prepared the letter and returned it to the Director for his signature, but the Director replied that the appellant would be the one signing the letter. *Id.* at 53-55. The appellant refused to sign the letter, stating that she had no direct involvement in the matter, she was unsure that the Contract Specialist actually had committed any wrongdoing, and issuing the letter would violate the Whistleblower Protection Act. *Id*. at 53.

Having reviewed the information that the appellant had at the time the Director ordered her to execute the letter of counseling, we find that she has failed to make a nonfrivolous allegation that she reasonably believed that the agency was committing any type of wrongdoing covered under 5 U.S.C. § 2302(b)(8)(A). Specifically, the Contract Specialist in question approached a contractor at the Washington, D.C. VA Medical Center and questioned the

contractor's presence in the facility, demanding to see the contract that authorized him to be there. *Id*. at 62-63. Word of this encounter reached the Director, who emailed the Contract Specialist and told him that they needed to speak about it. The Contract Specialist replied, with copies to several Senior Executive Service (SES) officials and others, explaining his side of the story. *Id*. at 61-62. The Director responded, assuring the Contract Specialist that there was a contract authorizing the contractor to perform his duties at the Medical Center. *Id*. at 60. He instructed the Contract Specialist to utilize his chain of command and asserted that there was no need to include the SES officials in his previous email. *Id*. The Director stated that the Contract Specialist had been repeatedly warned about this issue and that any future infractions would be met with an official counseling. *Id*. The Contract Specialist nevertheless replied to the Director, with copies to the SES officials, complaining about the way the Director was handling the matter and attempting to justify his own actions. *Id*. at 59. It was then that the Director ordered the appellant to issue the letter of counseling. *Id*. at 58-59. Having reviewed all this evidence, we find nothing in the Contract Specialist's last email—the one for which he was to be counseled—that could reasonably be construed as a protected disclosure. *Id*. at 59. Furthermore, it is clear that the Contract Specialist ignored the Director's stern warning and blatantly violated his explicit order not an hour after he had received it. *Id*. at 59-60. We therefore find no reasonable basis to conclude that issuing the Contract Specialist a letter of counseling would be, in any way, improper. The appellant has failed to make a nonfrivolous allegation that Disclosure 10 was protected.

*Disclosure 11*

¶23 The appellant alleges that on several dates between June and October, 2014, she disclosed to agency officials and entities that she was being retaliated against for whistleblowing activities. W-2 AF, Tab 41 at 9. She claims that she reported retaliation in the form of a reprimand, a proposed suspension, designation of certain absences as absence without leave (AWOL), and various other actions.

*Id.* Again, the appellant's ability to prove by preponderant evidence that this disclosure was protected may depend on her ability to prove that the disclosures and activities above were protected. However, at the jurisdictional stage, we find that she has met her burden of making a nonfrivolous allegation that she reasonably believed she was disclosing retaliation for her prior whistleblowing.

*Disclosure 12*

¶24    The appellant alleges that at some point in 2013 or 2014, agency management received a report of an external audit that uncovered serious problems with contracts in the Washington, D.C.-area, including a list of 16 expired purchase orders totaling $38,000,000. W-2 AF, Tab 41 at 9, Tab 46 at 65. She states that her superiors knew that she was interviewed in connection with this audit and perceived her to be a source of information to the auditor. W-2 AF, Tab 41 at 9. Given the nature of what the appellant alleged that the audit uncovered, we find that she has made a nonfrivolous allegation that she was perceived as a whistleblower. *See generally King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 8 (2011) (explaining the standard for establishing jurisdiction as a perceived whistleblower).

Personnel Actions and Contributing Factor

¶25    The appellant alleges that the agency took multiple personnel actions against her in retaliation for her alleged protected activity. W-2 AF, Tab 41 at 10-11. Considering the appellant's allegations as a whole, we find that she made a nonfrivolous allegation that the agency subjected her to nine personnel actions, and, as discussed below, that one or more of her disclosures and/or her protected activity was a contributing factor in those actions.

¶26    The appellant alleges that on July 11, 2013, the Director failed to select her for a Supervisory Contract Specialist position in retaliation for Disclosures 1 and 2. *Id.* at 10. Because the appellant alleges that she made Disclosures 1 and 2 within a few months of her nonselection for promotion, and that the Director

knew about these disclosures, we find that she has made a nonfrivolous allegation under the knowledge/timing test of 5 U.S.C. § 1221(e)(1) that they were a contributing factor in her nonselection, which is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ii). W-2 AF, Tab 41 at 5-6; *see Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (finding that a period of 1 to 2 years between a disclosure and a personnel action is sufficient to satisfy the timing component of the knowledge/timing test).[11]

¶27    The appellant alleges that on August 7, 2013, the Construction Team Manager issued her a mid-point performance evaluation with a rating of "unacceptable" in retaliation for Disclosures/protected activity 1, 2, and 3. W-2 AF, Tab 41 at 5-6, 10. However, we find that this mid-point review does not, in itself, constitute a "personnel action" under 5 U.S.C. § 2302(a)(1)(A). W-2 AF, Tab 42 at 87-89; *see King v. Department of Health and Human Services*, 133 F.3d 1450, 1452-53 (Fed. Cir. 1998). Therefore, we will not consider it further except in connection with the appellant's hostile work environment claim. *See infra* ¶ 35.

¶28    The appellant alleges that on October 16, 2013, the Deputy Director charged her retroactively with 91 hours of AWOL, pursuant to the Director's orders, in retaliation for Disclosures/protected activity 1-3 and 5.[12] W-2 AF, Tab 3 at 51-52, Tab 5 at 4, Tab 41 at 5-7, 10. The appellant asserts that the Director and Deputy Director were aware of these disclosures, including

---

[11] All of the personnel actions the appellant alleges were taken, threatened, or not taken in retaliation for her disclosures/protected activity occurred less than 2 years after the disclosures. Accordingly, we need not discuss the "timing" aspect of the knowledge/timing test with regard to each of the actions.

[12] The appellant also alleges that Disclosure 4 was a contributing factor in her AWOL. W-2 AF, Tab 41 at 10. However, because the appellant has failed to make a nonfrivolous allegation that Disclosure 4 was protected, we need not consider whether it may have been a contributing factor in this or any other alleged personnel action. The Director ended up sustaining most, but not all, of the AWOL. IAF, I-2, Tab 5 at 22.

Disclosure 3, which was made to the Inspector General. W-2 AF, Tab 41 at 5-7, 10. The Board has found that a charge of AWOL is a decision concerning pay and therefore constitutes a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix). *Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 16 (2005). We find that the appellant has made a nonfrivolous allegation, under the knowledge/timing test, that Disclosures/protected activity 1-3 and 5 were a contributing factor in this personnel action.

¶29     The appellant alleges that on October 16, 2013, the Deputy Director issued her a proposed letter of reprimand for AWOL in retaliation for Disclosures 1-3 and 5, and the Director upheld the reprimand on February 3, 2014,[13] in retaliation for Disclosures/protected activity 1-8. W-2 AF, Tab 41 at 10-11. We find that the reprimand constituted a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii) because the agency made it a part of the appellant's official personnel file and informed her that it could be considered in any future disciplinary actions and that she had the right to grieve it. *Id.* at 22-23; *see Rice v. Department of Agriculture*, 97 M.S.P.R. 501, ¶ 15 (2004). The proposed reprimand was a threat to take a personnel action, and it is therefore also a personnel action covered under the statute. Finally, we also find that the appellant made a nonfrivolous allegation, under the knowledge/timing test, that Disclosures/protected activity 1-3 and 5 were a contributing factor in the proposed reprimand, and, since the appellant alleges that the Director was aware of Disclosures/protected activity 1-3 and 5-8, that these were a contributing factor in his decision to uphold and effect the reprimand. W-2 AF, Tab 41 at 5-7, 10.

¶30     The appellant alleges that on October 16, 2013, the Deputy Director revoked her telework privileges on orders from the Director, and that this was in retaliation for Disclosures/protected activity 1-3 and 5. W-2 AF, Tab 5 at 7,

---

[13] The Director appears to have actually issued the letter of reprimand on January 29, 2014. W-2 AF, Tab 5 at 22-23.

Tab 41 at 10. The appellant also alleges that on March 24, 2014, the Director denied her request to reinstate her telework in retaliation for Disclosures/protected activity 1-8. W-2 AF, Tab 41 at 11. The Board has found that cancellation of a telework agreement can be a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) to the extent that it constitutes a significant change in working conditions. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 23 (2013). We further find that the Director's denial of the appellant's request to reinstate her telework privileges was also a personnel action, in that it was a failure to approve a significant change in duties. 5 U.S.C. §§ 2302(b)(8), (b)(9) (prohibiting a failure to take a personnel action in retaliation for a protected disclosure or protected activity). The appellant has alleged that the Deputy Director and Director were aware of the disclosures/protected activity at issue with respect to these actions, and we therefore find that the appellant has made a nonfrivolous allegation that Disclosures/protected activity 1-3 and 5 were a contributing factor in the revocation of the appellant's approval to telework and that Disclosures/protected activity 1-3 and 5-8 were a contributing factor in the denial of the request to reinstate telework.

¶31    The appellant alleges that on December 5, 2013, the Construction Team Manager (her rating official) issued her a final rating for fiscal year 2013 of "fully successful" with numerous negative comments. W-2 AF, Tab 41 at 10, 292-97. She further alleges that on January 16, 2014, the Director (her reviewing official) refused to revise the performance evaluation. W-2 AF, Tab 41 at 10, Tab 46 at 14-26. The appellant claims that these actions were in retaliation for Disclosures/protected activity 1-3 and 5-7. W-2 AF, Tab 41 at 10. The issuance of a final performance evaluation is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii). The appellant has alleged that either the Construction Team Manager or the Director, or both, were aware of the disclosures in question, *id.* at 5-8, 10, and we therefore find that she has made a nonfrivolous allegation,

under the knowledge/timing test, that they were a contributing factor in her final performance evaluation.

¶32    The appellant contends that on June 1, 2014, the Director ordered her to take on the duties of two full-time positions in retaliation for Disclosures/protected activity 1-3 and 5-8. *Id*. at 11. Specifically, it appears that the appellant was previously responsible for supervising one team of six contracting officials for the agency's Washington, D.C. VA Medical Center, and on June 1, 2014, she became responsible for the Martinsburg, West Virginia VA Medical Center as well, with an additional five contracting officials added to her team. *Id*. at 76-77, 87. On its face, this appears to represent a significant increase in the appellant's workload, and we therefore find that she has made a nonfrivolous allegation that the agency significantly changed her duties and responsibilities—a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii). As noted above, the appellant has alleged that the Director was aware of Disclosures/protected activity 1-3 and 5-8, and thus, we find that the appellant has made a nonfrivolous allegation, under the knowledge/timing test, that these disclosures/protected activity were a contributing factor in this alleged personnel action. *Id*. at 5-9.

¶33    The appellant alleges that, on June 24, 2014, the Deputy Director denied her request for sick leave and charged her with 1 hour of AWOL in retaliation for Disclosures/protected activity 1-3 and 5-9. *Id*. at 11, 54-55. However, it appears that the Deputy Director approved the request retroactively on July 28, 2014. *Id.* at 51. Because the agency completely rescinded this personnel action before the appellant filed her OSC complaint, we find that we lack jurisdiction to consider it as a separate personnel action. W-2 AF, Tab 3 at 14, Tab 41 at 12. *Cf. Lachenmyer v. Federal Election Commission*, 92 M.S.P.R. 80, ¶ 7 (2002). Nevertheless, we find that this matter is still relevant for consideration in the context of the appellant's claim of a hostile work environment, discussed below.

¶34     The appellant alleges that on September 24, 2014, the Director and Deputy Director proposed to suspend her for 10 days in retaliation for Disclosures/protected activity 1-3, 5-9, and 11.[14] W-2 AF, Tab 41 at 11, 32-43. A proposed 10-day suspension is a threatened personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii), and, since the appellant has alleged that the Director or Deputy Director, or both, were aware of the disclosures/protected activity she raised with respect to this claim we find that the appellant made a nonfrivolous allegation, under the knowledge/timing test, that Disclosures/protected activity 1-3, 5-9, and 11 were a contributing factor in the proposed suspension. *Id*. at 5-9.

¶35     The appellant alleges that on December 16, 2014, the Director included a negative memorandum and progress report in her fiscal year 2014 performance evaluation in retaliation for Disclosures/protected activity 1-3, 5-9, and 11-12.[15] *Id*. at 11, 264-76. This performance evaluation is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii), and as the appellant has alleged that the Director was aware of the disclosures/protected activity, the appellant has made a nonfrivolous allegation of contributing factor under the knowledge/timing test. *Id*. at 5-9.

¶36     Finally, the appellant alleges that the agency created a hostile work environment in retaliation for her protected activity. W-2 AF, Tab 41 at 10-11. The Board has found that the creation of a hostile work environment may constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) to the extent that it represents a significant change in duties, responsibilities, or working

---

[14] The appellant also alleges that Disclosure 10 was a contributing factor in the proposed suspension. W-2 AF, Tab 41 at 11. However, because the appellant has failed to make a nonfrivolous allegation that Disclosure 10 was protected, we need not consider whether it may have been a contributing factor in this or any other alleged personnel action.

[15] To the extent that the appellant is claiming the progress report as a separate personnel action, we find that it is not. W-2 AF, Tab 41 at 11; *see King*, 133 F.3d at 1452-53.

conditions. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. To meet this standard, an agency's actions must, "individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities." *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. In determining whether a hostile work environment is present, the Board will consider the totality of the circumstances, including agency actions that may not individually rise to the level of a personnel action. *Id.*, ¶ 18.

¶37        In this case, the appellant claims that a hostile work environment was created through the cumulative effect of numerous agency actions, including most of the personnel actions discussed above, as well as various other actions, including verbal berating, an investigation into her computer usage, a change in office space, exclusion from meetings, and exclusion from the agency's student loan repayment and tuition reimbursement programs. W-2 AF, Tab 41 at 10-11. We find that the appellant has made a nonfrivolous allegation that these circumstances comprised a hostile work environment for purposes of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii). Moreover, because she alleges that the individuals in her chain of command were aware of her disclosures/protected activity and took, threatened, or failed to take the actions that created the hostile work environment, we find that she also has made a nonfrivolous allegation of contributing factor under the knowledge/timing test. *Id.* at 5-9.

Exhaustion

¶38        The appellant filed her OSC complaint on July 16, 2014, and supplemented it with amendments and additional information several times over the ensuing 18 months. W-2 AF, Tab 3 at 39-121, Tab 41 at 12-327, Tabs 42-46. We find that she raised before OSC all of the disclosures/protected activity and personnel actions that she now raises in this IRA appeal, and she provided OSC with a sufficient basis to pursue an investigation. W-2 AF, Tab 3 at 39-121, Tab 41

at 12-327, Tabs 42-46; *see Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The record also contains a copy of OSC's February 1, 2016 close-out letter, informing the appellant that it was closing its investigation into her complaint and notifying her of her right to file an IRA appeal with the Board. W-2 AF, Tab 10 at 5-6. We therefore find that the appellant has proven by preponderant evidence that she exhausted her administrative remedies.

Conclusion

¶39      For the reasons explained above, we find that the appellant has exhausted her administrative remedies and made nonfrivolous allegations that the agency subjected her to numerous personnel actions in retaliation for a number of protected disclosures and for her communications with the Inspector General, which were protected activity. Therefore, she has established jurisdiction over her appeal and is entitled to the merits hearing she requested. *See Salerno*, 123 M.S.P.R. 230, ¶ 5.

¶40      The issues on remand will include whether the appellant can prove by preponderant evidence that Disclosures/protected activity 1-3, 5-9, and 11-12 were protected under the statute. The appellant also will need to show that she did, in fact, suffer the nine personnel actions discussed above, and that her disclosures/protected activity were a contributing factor therein. If the appellant proves her case, then the agency will have the opportunity to prove by clear and convincing evidence that it would have taken the same personnel actions notwithstanding the protected activity. *Id*.

## **ORDER**

¶41     For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                          _____/s/ for_____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.